## NORTHERN PAC. R. CO. v. HAYES.

(Circuit Court of Appeals, Seventh Circuit. June 3, 1898.)

### No. 437.

1. EVIDENCE—OPINION—SPEED OF TRAIN.
   It is reversible error to allow the plaintiff to give his opinion as to the speed of the train that struck him,—that being a material issue,—where he did not see the train at all, and formed his opinion only from the force of the blow, and the distance to which he was thrown.

2. WITNESSES—CREDIBILITY—INSTRUCTIONS.
   An unqualified instruction to a jury, that if they are satisfied from the circumstances, or from the appearance of a witness, that he has not testified to the truth, or to the whole truth, they are at liberty to reject his testimony, leaves too much to the arbitrary discretion of the jury, and is reversible error.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This is an action on the case, to recover damages for personal injuries alleged to have been sustained through negligence in the operation of a train of cars belonging to the plaintiff in error. The facts, as stated by this court when the case was here on a former writ of error (20 C. C. A. 52, 74 Fed. 279), are as follows: "The accident occurred in the Central Avenue yards, in the city of Chicago, and south of the main tracks of railway owned by the Chicago & Northern Pacific Railroad Company, which railway had, long prior to the injury, been eased for a term of years by the Chicago & Northern Pacific Railroad Co pany to the Wisconsin Central Company, a corporation owning or operating a line of railway through the state of Wisconsin to the state line dividing the states of Illinois and Wisconsin, and which line of railway first mention had prior to the accident been leased by the Wisconsin Central Company, to ther with its own lines of railway, for a term of years, to the Northern Pa ific Railroad Company. The latter company operated, by means of its own l ie and the leased lines, a continuous line of railway from the city of Chic go, through the state of Wisconsin, to the Pacific Coast. At the Central venue yards there were two main tracks running east and west; the north tr k being the out-bound main track; the south track being the in-bound ma track. These two tracks were used by the Northern Pacific Railroad Con any and by the Chicago, St. Paul & Kansas City Railroad Com-

pany for all of their trains entering or leaving the city of Chicago. Central avenue crosses the main tracks substantially at right angles. West of Central avenue is located a switch in the out-bound track, and also a switch in the in-bound track, with a cross-over connecting the two tracks at these switches. Near the east line of Central avenue is a switch in the in-bound track, from which a track leads to the southeast. A short distance east from this switch in the track projecting from the in-bound main track is another switch, from which diverge two tracks running east and west, parallel with each other. Of these, the north track is called the 'Wisconsin Central,' or 'W. C. Lead,' and extends for some distance east into that part of the yard appropriated for the use of the Northern Pacific Railroad Company, or, as was commonly known, the 'Wisconsin Central Line.' The south one of these tracks was known as the 'Kansas City,' or 'K. C. Lead,' from which branched, at short intervals, switch tracks towards the southeast, forming the K. C. yard. The distance between the centers of tracks at this locality is thirteen feet; the distance between the nearest rails of adjoining tracks being eight feet. The appellant was the general night yard master of the Chicago, St. Paul & Kansas City Railroad Company. At half past eight of the night in question, in company with one Roth, a servant under him, he left the station, which was about 150 feet west of Central avenue, for the purpose of going down into the yard of that company to give certain orders. They walked east between the in-bound main track and the K. C. lead to the track connecting these two tracks. At a point near No. 2 switch it occurred to him to send a message to the city, and the two men stopped there for a few moments while the appellant gave Roth directions with reference to the message. While so standing, appellant was looking to the west, in the direction from which the train causing the injury came, but saw no train approaching. Upon separating, Roth crossed the W. C. lead towards the north, and started west towards the station. The switch stands placed between the tracks are within three feet of the south rail of the W. C. lead. At this time a K. C. train was switching on the K. C. lead. When that lead is occupied by a train, one can only pass on the north side of the switch stand; and, to do so, it is necessary for him to walk on the ties of the W. C. lead. The appellant, upon separating from Roth, walked easterly upon the ends of the ties, carrying a lighted lantern. He had covered a distance of from forty-five to sixty feet from the spot where he left Roth, and was about to leave the end of the ties for the narrow space between the two leads, when he was struck by a train of the Northern Pacific Company backing eastwardly on the W. C. lead, and was thrown under the Kansas City train, and received the injury complained of. The train that struck the appellant was a west-bound freight train of the Northern Pacific Company, consisting of an engine and six cars, which was backing upon the track in question. The train had come from the city, and gone west of the station, on the main track, and for some purpose was backing into the yard upon the W. C. lead. It had probably passed the station while the appellant was there, before he had gone east into the yard; but, for some reason (probably owing to the passage of the K. C. train upon the other track), he was not aware of the fact. The rules of the company require that, in backing the train through the railroad yard in the nighttime, a man should be stationed on the rear car, displaying a bright light. The evidence for the appellant tended to show that there was no man or light upon the rear car of this train, and that no signal or warning of any kind was given of its approach, that it was moving at a speed of from fifteen to twenty miles an hour, and that the night was dark and foggy. From the time he left Roth until he was struck, the appellant did not again look back to the west. The cars varied in width from eight feet two inches to nine feet two inches. The bolt heads, hand holds, and car door projected some four inches in addition, so that a car of the greatest width would extend over the rail some two feet and three inches, or, including the space occupied by the bolt heads, etc., two feet and seven inches. When both tracks were occupied by cars, there would be not to exceed three-feet clearance between the two tracks. The accident occurred about 8:30 o'clock in the evening. There was evidence tending to show (but it was not undisputed) that this second section, or extra train, was only occasionally run, and when there was too much freight for

the regular train to carry. It is left somewhat obscure by the evidence how far he had passed beyond the switch No. 2 upon the end of the ties before he sought to turn; that is, whether the distance was fifteen to twenty paces from the point where he left Roth, or fifteen to twenty paces from the switch. At one point in the evidence the appellant states that he had gone some fifteen or twenty feet from the switch at the time he was struck by the train."

Chas. B. Keeler, K. K. Knapp, and Burton Hanson, for plaintiff in error.

James C. McShane and Russell M. Wing, for defendant in error.

Before WOODS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge, after stating the facts as above, delivered the opinion of the court.

There are three assignments of error made by the plaintiff in error and insisted upon in the argument: (1) That the court below erred in overruling the defendant's request to instruct the jury to find a verdict in its favor upon the ground that the undisputed evidence showed that the plaintiff was guilty of negligence which contributed to produce the injury. (2) That the court erred in permitting the plaintiff, against the defendant's objection, to state his opinion as to the speed of the train which struck him at the time of the accident. (3) That the court erred in charging the jury as follows: "You have a right to reject the evidence or testimony given by one witness, if you are satisfied from his appearance, or from the circumstances, that he has not testified truly, or to the whole truth." Exceptions supporting these several assignments of error are duly preserved, and appear in the record.

The speed of the train which backed into the yard that night, and which struck the plaintiff, was a material question at issue, and much disputed on the trial. The plaintiff did not see the train at all. He was walking in the same direction, ahead of it, and was struck in the back, and thrown, he thinks, 20 or 30 feet; and he says he was never struck by a train before in that way, and had nothing to judge of as to the speed, except that one blow. Nevertheless he was allowed, against the defendant's objection, to give his opinion of the speed of the train, which he says was very fast, and, he would judge, between 15 and 20 miles an hour. We think this was error. He was simply guessing at the distance he was thrown, and from this, and from the force of the blow on his shoulder, he guessed at the speed of the train. It can hardly be assumed that the jury would not be influenced in any degree by such testimony. Indeed, the very fact that it was held competent, and permitted to be given to the jury, would naturally be taken by them as a warrant that some credit might or should be given to an opinion so poorly founded. It is elementary that the admission of illegal evidence over objection necessitates a reversal. Waldron v. Waldron, 156 U. S. 380, 15 Sup. Ct. 383, and cases cited. In order that the court may not disturb a judgment for error, it should appear beyond a doubt that the error complained of did not and could not have prejudiced the rights of the party objecting. Railroad Co. v. O'Reilly, 158 U. S. 337, 15 Sup. Ct. 830.

The third assignment of error, made upon the charge of the court as to rejecting the evidence of witnesses, is also well made. The instruction is too broad and unqualified, and would give the impression to the jury that they were quite at liberty to reject the testimony of any witness, at their own unrestricted will and pleasure. Nor is the instruction helped out by any other given on the same subject. It is true, the rule is better stated in another place; but the instruction to which exception was taken is in addition to that, and would be taken independently by the jury. The jury were told that they had the right to reject the evidence or testimony given by a witness if they were satisfied from his appearance, or from the circumstances, that he had not testified truly, or to the whole truth. What appearance or what circumstances would the jury understand that the court referred to? Could the jury reject a witness' evidence on account of his dress or color? Should the circumstances be those disclosed on the trial, or would it also include those within the knowledge of the jury, derived from other sources? Would the whole truth, which the witness must testify in order to be believed, include those in regard to which he is not interrogated on the stand, or which by inattention or inadvertence have been omitted? The instruction seems quite too unguarded and unqualified, leaving too much to the arbitrary discretion of the jury. The jury might well understand from such an instruction that it was left unrestrictedly to them whether to believe or disbelieve any witness. Insurance Co. v. Gray, 80 Ill. 31; Evans v. George, Id. 53. In the latter case the court say:

"The proposition that the jury have the right to disbelieve such witnesses as, in their judgment, under all the circumstances, are worthy of belief, is not the rule. The jury, although they are judges of the credibility of the witnesses, have no right to disbelieve arbitrarily the testimony, unless where such witnesses have willfully sworn falsely to material facts in the case."

In Little v. Railway Co., 88 Wis. 402, 60 N. W. 705, the charge under consideration was this:

"If you find a witness—conclude a witness—has testified falsely as to any material fact in the case, you are permitted to disregard all of that witness' testimony, unless it is supported by other evidence."

The court, in commenting upon this instruction, says:

"This instruction authorized the jury to disregard all the uncorroborated testimony of any witness, if they reached the conclusion that he had, even through inadvertence or mistake, sworn falsely as to any material fact. This was error. As a general rule, the question of the credibility of witnesses is for the jury. If they find that a witness has testified falsely as to a material fact, they are, of course, at liberty to disregard such false testimony. But before they should apply the maxim, 'False in one thing, false in all things,' they should find that the witness knowingly or intentionally or corruptly swore falsely as to a material fact,"—citing Mercer v. Wright, 3 Wis. 645; Morely v. Dunbar, 24 Wis. 185; Loucheine v. Strouse, 49 Wis. 624, 6 N. W. 360; Black v. State, 59 Wis. 471, 18 N. W. 457; People v. Evans, 40 N. Y. 5; Pease v. Smith, 61 N. Y. 483; People v. Chapleau, 121 N. Y. 276, 24 N. E. 469.

The conclusions reached by the court in regard to these two assignments of error render the consideration of the first assignment,

relating to the refusal of the court to take the case from the jury, unnecessary. The judgment of the court below is reversed, with instructions to grant a new trial.