### KOEHLER v. NEW YORK STEAM CO.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. APPEAL—ORDER DENYING NEW TRIAL—QUESTIONS CONSIDERED.
   Where an order denying a new trial does not state the grounds of the motion, the court on appeal can only consider the evidence so far as is necessary to pass on the exceptions.

2. INJURY TO SERVANT—EVIDENCE—DEFECTIVE APPLIANCES.
   Where a cause of action for the death of a servant, caused by the bursting of a steam pipe, is predicated on a defective pipe, the fact that the bursting of the pipe is caused by water hammer, due to turning on the steam, does not authorize a recovery.

3. SAME—UNAUTHORIZED ACT OF FOREMAN.
   Where a foreman disobeys his instructions, in turning on steam in steam pipes, the master is not liable for the death of a servant working on the pipes, caused by the bursting of a pipe as a result thereof.

4. SAME—OPINION EVIDENCE—ADMISSIBILITY.
   In an action for the death of a servant, caused by the bursting of a steam-pipe elbow, before it was shown what pressure of steam was in the pipe, an expert called by plaintiff gave his opinion as to the cause of an explosion, in answer to a question containing no assumption as to the pressure of steam in the pipe, and no assumption based on the appearance of the broken elbow; but, assuming that the steam had been passing through it for an hour, he stated that the elbow, or the connection of the pipe with the elbow, must have been defective. *Held*, that it was error not to strike out the answer as not warranted by the facts assumed in the question.

   Hatch, J., dissenting.

Appeal from trial term, New York county.

Action by Elizabeth Koehler, as administratrix of the estate of John Koehler, deceased, against the New York Steam Company, for the negligent killing of intestate while in defendant's employ. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Frank V. Johnson, for appellant.
Edward W. Alexander, for respondent.

LAUGHLIN, J. The action is brought under the statute to recover for the death of John Koehler. The defendant is a domestic corporation engaged in supplying steam through its pipes laid in the public streets of the city of New York to private consumers for mechanical power and for other purposes. At the time of the accident the defendant had a 3-inch main in use along Nassau street, crossing Cedar street. It was engaged in laying a 6-inch main

through Cedar street from Broadway across Nassau street. The decedent had been in its employ for upwards of two years as a laborer, excavating trenches and laying and connecting pipe. He and a fellow workman commenced excavating the trench across Nassau street on Friday, September 21, 1900. At the point where the new and old line would have intersected, there was in the 3-inch pipe what is known as a "swing joint," to accommodate expansion and contraction. The defendant's mechanical engineer ordered this swing joint taken out, and another one inserted, about 4 feet to the north of the line of new pipe. The old swing joint was taken out late on Saturday afternoon or Sunday morning, and a new cast-iron elbow put in, as directed, to carry the old line over the new line of pipe. The 3-inch pipe line was run from the bottom of the trench perpendicularly for about 20 inches, and was there connected with the horizontal continuation by an elbow. The 6-inch main had been laid along the bottom of the trench, which was 5 or 6 feet deep; but there was something wrong with its construction, and it had to be disconnected again, removed, fixed, and replaced. This last-mentioned work was undertaken Sunday morning, September 23, 1900, by decedent and one or two other employés and their foreman. Live steam had been passing through the 3-inch pipe during all the time this work had been in progress down to Sunday morning, except, possibly, late on Saturday, if these elbows were put in then; but, the consumers not needing steam that morning, the decedent's foreman shut it off by turning a valve at a manhole situated just north of the new line of pipe, and four or five blocks from the plant and boilers. About 2 o'clock in the afternoon some customers desired steam, and the foreman turned it on again full pressure. At this time the decedent and the men with whom he was working were about to connect the 6-inch main at a point under, or nearly under, the 3-inch pipe. The decedent, by direction of his foreman, was in the bottom of the trench, assisting in making the connection. A device known as a "chain tongs," consisting of steel bars put through a chain passing around the pipe, was used for the purpose of screwing the pipe together. After the steam had been turned on about one hour, the new upper elbow burst, first at the under side, and immediately thereafter at the upper side, and fell to the bottom of the trench. The escaping steam severely scalded decedent's face, head, and body. He was taken to the Roosevelt Hospital, where he died six days later. He doubtless died of the injuries thus sustained, but no evidence other than these facts to establish it appears in the record, although attention was called to the insufficiency of the evidence in that regard by the respondent's motion for a nonsuit. The order does not state the grounds upon which the motion for a new trial was made, and we are therefore not at liberty to consider the weight of the evidence, or to review the facts, except so far as necessary to pass upon the exceptions. The defendant duly moved for a nonsuit and for a direction of a verdict upon the grounds, among others, that no negligence on its part had been shown, and that plaintiff had failed to establish the cause of action alleged, or any cause of ac-

tion; and exception was taken to the refusal of the court to grant the same.

The negligence with which defendant is charged, in substance, is in using a defective elbow, without properly inspecting and testing it, and failing to make and promulgate necessary rules for the guidance of its employés. There was considerable evidence given on the part of the appellant tending to show that the bursting of the elbow might have been caused by water hammer, resulting from the formation of water in the pipe by the condensation of steam upon the flow of steam being cut off, and this water being set in motion by the live steam, turned on again, and drawn through the pipe, and up this perpendicular pipe against the elbow, when the valves in the buildings where steam was used were opened. If water hammer was the cause, plaintiff, doubtless, was not entitled to recover. No negligence is assigned in respect to the general construction of the line in failing to provide against water hammer, and defendant would not be responsible for the negligence of the foreman. It appeared that the foreman disobeyed his instructions, in turning the steam off and on again without notifying the chief engineer or the superintendent in charge of the steam plant. Water hammer might have been avoided by turning the steam on slowly, instead of full head. But plaintiff does not claim that the accident was due to water hammer, and an expert called by her testified that it could not have been so caused. It is therefore unnecessary to consider this question further. The plaintiff's theory of the case upon the trial, as shown by the evidence adduced and the record, was that the accident was caused by a defect in the elbow, which could have been discovered had it been properly tested, and that is the contention of her counsel upon the appeal. There was a defect in the under side of the elbow at one point disclosed by the break, but it did not extend to the surface, and was not discoverable by mere inspection. The elbow was an extra-heavy 3-inch casting, .45 of an inch in thickness at the thinnest part, and was one of many similar elbows manufactured for defendant from its own molds by founders of high standing. These elbows were from 40 to 50 per cent. heavier and stronger than the standard elbows in common use for such purposes. An expert called by the plaintiff testified that this defect weakened the casting somewhat, and that it could have been discovered by what is known as the "hammer test." After it appeared that the steam pressure was about 80 pounds to the square inch, many experienced, competent experts, some of whom had no relations with the defendant, testified that the defect was slight, and common to such castings; that it did not materially impair the strength of the elbow, and would not justify its rejection; that it could not have been discovered by the hammer test, or by any practical test; that the factor of safety for which allowance had been made was such that this elbow would readily stand a pressure of more than double the pressure in the pipe on this occasion. As has been seen, the vital point litigated upon the trial was whether the defect in the casting caused the accident. The plaintiff introduced no competent evidence on that subject, unless proof of this slight defect be itself deem-

ed such. However, we think that incompetent evidence was erroneously received upon this question. After it had been shown that this elbow exploded, but before it was shown what pressure of steam was in the pipe, or whether the steam was being drawn off by consumers, which would put it in motion, an expert called by plaintiff was permitted, under defendant's objection and exception, properly taken, to give his opinion as to the cause of the explosion in answer to a hypothetical question containing no assumption as to the pressure of steam in the pipe, and no assumption based on the appearance of the broken elbow, but assuming that the steam had been passing through it for an hour. His answer was that the elbow, or the installing of the connections of the pipe with the elbow, must have been defective, or that the connection of the elbow with the pipe was not right,—"may be one end of the elbow was too fast screwed in than the other end of the elbow." The court denied defendant's motion to strike out the answer, made upon the ground that it was immaterial, remote, and speculative, and had no bearing upon the issues, being substantially the same objection as was interposed to the reception of the evidence; and an exception was taken to this ruling. It is manifest that this testimony was not evidence, and could be of no value. The facts assumed did not, in any aspect of the case, warrant the answers given by the witness. For aught shown by the question, there may have been sufficient pressure of steam to have exploded the elbow if it contained no flaw. Again, the explosion might have been caused by water hammer, or by a blow upon the pipe while the steam was on; and, as the elbow was indented, this was the opinion of several experts. Yet these answers of the witness were allowed to go before the jury, and have been permitted, in their estimation, to outweigh all the evidence given by the other experts, based on the material facts proven in the case. This testimony was damaging in the extreme; and the jury may, upon it, have found that the elbow was not properly connected, and may have held the defendant upon that false theory, not presented by the issues.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except HATCH, J., who dissents.