HOPPER v. EMPIRE CITY SUBWAY CO., Limited.

(Supreme Court, Appellate Division, First Department. January 16, 1903.)

1. DREDGE BOAT—COLLISION WITH BRIDGE — EXTENT OF INJURY—IMMATERIAL EVIDENCE—ADMISSION—EFFECT.

In an action for damages caused by a collision between defendant's dredge and the draw of a bridge which plaintiffs were constructing, where the only question in dispute was the extent of the damage, error in admitting evidence of plaintiff's witness that, a day or two afterwards, men in defendant's employ attempted to attach a hawser to the end of the draw, that witness refused to permit them to doꞌ so, and that a letter was written defendant, calling its attention to the fact that the machinery of the draw was liable to be damaged, was not prejudicial to defendant.

2. SAME—FORCE OF IMPACT—SPECULATIVE EVˑ ˑNCE.

A civil engineer called by defendant couˑd not testify as to what would be the greatest force which the dredge could exert in any impact; the question being speculative, and not having any relation to the force of the impact which actually occurred.

3. SAME—CROSS-EXAMINATION OF WITNESS—SCOPE.

Where a witness called by plaintiff in rebuttal merely described the construction of a bridge and the displacement that had been discovered after an injury to it, it was not error to refuse to permit him on cross-examination to be asked whether the impact of a dredge against the bridge could have caused the injury.

4. SAME — OPINION EVIDENCE — HYPOTHETICAL QUESTION—FORM AND SUFFICIENCY.

A witness who was not present and did not see the impact of a dredge against a bridge could not testify whether it could have caused the injury subsequently discovered, where the question asked him did not state the force of the blow, the angle at which it was struck, the part of the draw which was struck, or any other facts upon which he could base an opinion.

Appeal from trial term, New York county.

Action by Isaac A. Hopper against the Empire City Subway Company, Limited. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Henry A. Powell, for appellant.
Moses Weinman, for respondent.

INGRAHAM, J. The plaintiff was engaged in constructing a bridge across Harlem river at Third avenue, in the city of New York; and the defendant was at the same time engaged in constructing a subway under the Harlem river, alongside of the bridge. In constructing this subway the defendant used a dredge of about 500 tons, and in moving this dredge it came in collision with the draw of the bridge, and caused an injury, for which the plaintiff has recovered a judgment in this action. These facts were not disputed, the substantial question in the case being as to the amount of the damage caused to the bridge in consequence of this collision. An inspector, who was in charge of the bridge on behalf of the city of New York, testified: That at the time of this collision, which was fixed by the witness as on December 6, 1897, the dredge was located on the southwest side of the center pier. That he was standing on the north corner of the river pier when the dredge struck the bridge on the northwest side of the tower post of the bridge. That he walked back towards the draw, and as he was about to put his foot on the new bridge he heard another blow, and the bridge deflected on the end, and before he could get to the top it rebounded back again. That the witness walked over to where the dredge had struck the bridge, and found that the post had been started; that the bracket under the post had been sheared off, and all the putty that had been used around the hand rail had been started; that a fascia plate for about 3 to 3½ feet had been broken off. A further examination disclosed that the draw of the bridge had been moved by the blow. There was also evidence tending to show that the draw had been properly constructed. Subsequently, on January 4, 1898, an attempt was made to turn the draw, and after it had been turned for a short distance there was a report which sounded like the dropping of bolts, and an examination disclosed that the center pin had been completely separated from what were called the "transverse struts"; that the rivets holding the same had been sheared off; that the center pin had been crimped up from the northwest corner, and on the southwest corner had been somewhat depressed. There was other evidence tending to sustain this condition. Subsequently the plaintiff caused the necessary repairs to be made at a cost of $1,989.39. The evidence on behalf of the defendant fixed this collision on the day subsequent to that testified to by the plaintiff's witnesses, and evidence was introduced tending to show that the collision was very slight, and caused no injury to the bridge, except the breaking of the fascia plate. The court submitted the question to the jury, who found in favor of the plaintiff. There was no exception to the charge, and no request to charge was made by the defendant.

The appellant relies upon several exceptions to rulings upon evidence, the first of which is an exception to a ruling of the court upon the testimony of Mr. Reeves, who was the superintendent of construction of the bridge. He testified that on the 8th day of December, two days after the accident, he saw some men in a boat row from a pile driver belonging to the defendant, with a hawser in the boat; that they were rowing towards the end of the draw of the bridge; and that he asked the men what they were going to do. Counsel

for the defendant objected to anything that the men said, and this objection was overruled, and the defendant excepted. The witness then testified that the men said their foreman had instructed them to attach the hawser to the end of the draw, so as to be able to turn it; that the witness refused to allow the men to attach the hawser to the bridge, when they desisted; that in consequence of this occur-rence a letter was written to the defendant, calling its attention to the fact that the machinery of the draw was not completed, and was liable to be damaged, and notifying the defendant that for any dam-age or loss resulting to the bridge the defendant would be held re-sponsible. This letter was also offered in evidence, was objected to, the objection was overruled, and the defendant excepted. It is diffi-cult to see how this testimony could have in any way injured the defendant. It related to an occurrence that happened two days after the accident, according to the plaintiff's account, or a day after, ac-cording to the defendant's account. The hawser was not attached to the bridge, and the receipt of the letter was afterwards admitted. The evidence was quite immaterial. It had no possible bearing upon the extent of the injury caused by the collision between the dredge and the bridge, which was the only question in dispute; and, when the court came to charge the jury, he called their attention to this testimony, and told them that, as it had not been connected in any way with the injury, they were to disregard it. Such an exception, even if the admission of the testimony was error, would not justify us in reversing the judgment.

The next exception relied on by the defendant arose upon the examination of a civil engineer, who was one of the contractors in constructing this subway. He testified that the collision occurred on Sunday, December 5th; that when moving the dredge it continued its work, and just as it ended its motion it touched the fascia plate; that, this plate being of very thin cast iron, it broke and dropped into the water; that the blow that struck the fascia plate was sidewise, as the dredge was moving ahead; that he examined the bridge after-wards, and found that the only injury to it was the breaking of this fascia plate. The witness then testified as an expert as to the con-struction of the bridge, described this draw and the machinery for moving it, and testified that this center pin was insufficient to over-come the strain of opening the bridge, and that the break that oc-curred when the bridge was open on January 4th was because this center pin was insufficient. The witness was then asked:

"Now, can you state in any way—is it possible to state—what would be the greatest force that that structure could exert in any impact, imagining the worst possible conditions, the greatest amount of velocity and movement, and the greatest exercise of power that the structure has?"

It is quite evident that this question was incompetent, as it was based upon general supposition, without evidence to support it. The witness was asked to guess as to what was the greatest force that this dredge could exert in any impact. That would depend upon the speed with which the dredge was being forced against the bridge, and many other conditions. The question was speculative, not based upon any testimony in the case, and was clearly incompetent.

The witness was then asked:

"I wish you would state, Mr. Moore, all the various data bearing upon the question as to the maximum force of any impact which that dredge, or any part thereof, could cause. Give me the data."

This was objected to, and also excluded. This question was subject to the same objection,—was speculative, not based upon any facts proved, and had no relation to the force of the impact that actually occurred; and the witness was subsequently allowed to testify to all that was competent upon this subject. He subsequently testified that he was present and saw the blow struck; that he could determine the force of the blow by the velocity with which it was struck; that the velocity of the dredge at the time was about 10 feet a minute; that the force of the impact would not exceed 20 tons; that the force that would be required to move this draw horizontally was 33 per cent. of its weight; and that the weight was 2,200 tons. So that the pressure that would be required to move this draw horizontally would be something over 700 tons.

The next exception was presented upon the cross-examination of an expert, the superintendent of the Phœnixville Bridge Company, who was called as a witness for the plaintiff in rebuttal. He described the construction of the bridge, and the repairs that were made after the accident; testified to the condition in which he found the bridge, and the repairs that were necessary; that the additional parts were put in to make up the strength of the bridge that had been lost by its displacement, and that the bridge had been properly built on its center, according to the plan; that in examining the injury they discovered that the draw had been knocked off its true center about 2¾ inches; that, when they examined it before, it had been on its true center. Upon cross-examination the witness was asked, "Was the blow which caused the injury to the fascia plate of such a character as to explain the injuries in the drum which you saw?" to which the witness replied, "I cannot answer the question. I saw the injuries inside of the drum." He was then asked: "Now, I want to ask you whether it is possible for the blow which caused the injury to the fascia plate to do the injuries which you say existed in the drum?" That question was objected to, the objection sustained, and the defendant excepted. I do not think that this was error. The witness had been called in rebuttal, and had merely testified to the original construction of the bridge, and the displacement that had been discovered after the injury, which was in reply to the evidence introduced by the defendant. Whether the blow that broke the fascia plate could have caused the injury to the draw had no relation to the testimony that the witness had given on rebuttal; and whether or not a cross-examination should be continued beyond that relating to the particular question that the witness was called for was in the discretion of the court. It was not error for the court to refuse to allow the counsel to open up the question as to whether or not this blow or impact of the dredge against the bridge could cause the injury subsequently discovered. But the question was clearly incompetent for another reason. The witness was not present and did not see the blow, and there was no statement in the question as to

the force of the blow, the angle at which it was struck, the part of the draw that was struck, or any other of the facts upon which the witness could base an opinion upon that subject. The witness had before testified that it was impossible for him to say whether the blow which caused the injury to the fascia plate was of such a character as to explain the injury in the drum which he saw; and the further question as to whether it was possible for the blow to cause such injury was clearly incompetent unless the conditions that existed, with the nature of the blow, were made a part of the question, so that the jury could understand, in considering the testimony, just what conditions the witness had assumed to exist when he gave his opinion as to whether the blow that was struck could have caused the injury to the draw for which the plaintiff sought to recover.

These are the only exceptions relied upon by the defendant, but I do not think that any of them would justify us in reversing the judgment. The case was fairly tried. There was evidence clearly supporting the plaintiff's claim. It was submitted to the jury by a charge to which no exception was taken, and I see no reason for reversing the action of the jury.

It follows that the judgment and order appealed from should be affirmed, with costs. All concur.