[No. 5860.   Decided January 5, 1906.]

CHARLES COOK, *as Guardian etc. of Joseph Cook, a Minor, Respondent,* v. STIMSON MILL COMPANY, *Appellant.*[1]

EVIDENCE—SPEED OF TRAIN—EXPERTS—OPINION OF A BRAKEMAN FROM CONDITIONS AFTER A WRECK—COMPETENCY. Brakemen or firemen of a few years experience on a logging road are incompetent to give expert evidence as to the rate of speed at which a logging train was running, merely from appearances of a wreck, when they were not present and did not see the accident, and their knowledge was not derived from observations of similar wrecks, and when the conditions were abnormal and did not relate to the ordinary operation of trains with which railroad men are presumed to be familiar.

APPEAL—FORMER DECISION—LAW OF CASE. Upon a second appeal of a cause the decision on the first appeal becomes the law of the case.

Appeal from a judgment of the superior court for Snohomish county, Joiner, J., entered April 29, 1905, upon the verdict of a jury rendered in favor of the plaintiff, after a trial on the merits, in an action for personal injuries sustained while riding on a logging engine. Reversed.

*Graves, Palmer, Brown & Murphy* and *Robert A. Hulbert,* for appellant.

*Cooley & Horan,* for respondent.

RUDKIN, J.—This is an action to recover damages for personal injuries suffered by Joseph Cook, a minor, while riding on one of the defendant's logging trains. The case was before this court on a former appeal and will be found reported in 36 Wash. 36, 78 Pac. 39. We deem it sufficient to say, in addition to the statement of the case contained in the former opinion, that one of the grounds of negligence charged was that the train was running at an unusually high and dangerous rate of speed at the time of the accident, to wit, at the rate of forty miles per hour. The plaintiff had judgment below, and the defendant appeals.

[1]Reported in 83 Pac. 419.

At the time of the accident which caused the injury com-
plained of, a logging train operated by the appellant, con-
sisting of an engine, tender, and eight cars loaded with logs,
was approaching one of its camps. As the train rounded
a curve, the fireman, who occupied a position on the engine
toward the inside of the curve, discovered some cattle on
the track about one hundred feet ahead of the train. He
immediately sounded the whistle and, by the time the en-
gineer could see the cattle from his position on the engine
toward the outside of the curve, the train was within about
a rail's length of them. Believing that he could not stop
the train before striking the cattle, and that any attempt
on his part to do so would result in piling the logs from
the cars on top of the engine, the engineer threw open the
throttle in order to strike the cattle as hard as possible, deem-
ing this the safest and best course under the circumstances.
When or soon after the train struck the cattle, the forward
trucks of the engine, the trucks of two of the cars, and one
of the trucks of a third car left the rails. The engineer
kept the engine moving ahead as best he could, to prevent
the logs from piling on top of the engine. After the train
had proceeded from 500 to 700 feet from where it struck
the cattle, it stopped, the logs forced the tender up against
the engine and crushed the respondent's foot or leg, causing
the injury which constitutes the subject-matter of this con-
troversy.

One of the controverted questions at the trial was the rate
of speed at which the train was moving at the time the cattle
were discovered on the track, the appellant claiming that the
train was running from 12 to 15 miles an hour, the respondent
claiming that the rate of speed was much higher. To prove
the rate of speed, the respondent called two witnesses, neither
of whom was present or saw the accident. The witness Frier-
mood was in the employ of the appellant for about eight
months in all—how long prior to the accident does not appear.
His experience in railroading is shown by the following an-

swer to a question propounded to him: "I was working in the shops for a while, I fired engine a while, and I was breaking a while." Between the time of the accident and the second trial of the case, the witness was in the employ of the Northern Pacific Railroad Company for a period of about two and one-half years in the capacity of brakeman. The following are some of the questions propounded to this witness on his direct examination, together with the objections thereto, the court's rulings, and the answers given:

"Q. What was the condition that you found there of the logs upon the first set of trucks back of the engine? A. When I got down there, I found they had shifted forward and shoved the tank into the cab, and some of them were as far as the front of the engine. Q. How do you mean— A. Shoved by the tank. Q. Pushed right by? A. Right by the tank, and as far as the front of the engine. Q. What would that indicate, if anything, as to the speed at which the train was going previous to the time when it was stopped, or at the time when the cattle were struck? Mr. Graves: Objected to upon the ground that the witness has not shown himself competent to answer such a hypothetical question or give an opinion upon those facts. Overruled. Defendant excepts. A. It looks to me like the speed would be rather swift down there; engine started suddenly and the logs shifted that way. Q. From the conditions that you found existing there at the time when you went down to the wreck, the distance which the train had apparently run after striking the cattle, and the general condition in which you found it, could you form any opinion as to the rate of speed at which that train was running when it jumped the track? A. Well, I should think that— Mr. Graves: Just answer yes or no. Q. Yes; as to whether you can give an opinion. A. Yes, sir, I can give an opinion. Q. What, in your opinion, was the speed at which that train was running at the time when the cattle were struck? Mr. Graves: We object to that, may it please your honor, that the witness has not shown that he is in any manner qualified to give an opinion upon such a state of fact, and that his opinion would be entirely valueless as to what the rate of speed might have been. Overruled. Defendant excepts. A. In my opinion, the speed was about thirty miles an hour. Q. Now, in your opinion, was

that a safe rate of speed to maintain in coming down that grade? A. No, sir. Q. Would the engineer have his engine under control going at that rate of speed? A. No, sir; not with a logging train. Mr. Graves: We move to strike out this last answer and question the witness answered, upon the same ground as our objection to the questions above, that the witness is not competent to express an opinion, and the further reason that there is no one would be competent to express an opinion from such facts as this witness saw. The Court: Motion denied. Defendant excepts."

The experience of the witness Davis was about the same as that of the former, excepting that he was a fireman, instead of a brakeman. His testimony, with the objections thereto, was as follows:

"Q. What, in your judgment, was the rate of speed at which that train was running when it jumped the track? Objected to upon the ground that the witness is not competent, and there are no facts in the case or stated in the question that would enable a witness to form an opinion that would be of any value as evidence in this case. Overruled. Defendant excepts. A. I should think thirty or thirty-five miles an hour."

It seems to us that the foregoing testimony was incompetent and should have been excluded. It either requires no expert knowledge to enable one to draw an inference as to the rate of speed of a train from the conditions surrounding a wreck caused by it, or the witnesses in this case were not shown to possess such expert knowledge. In the former case, any inference to be drawn was for the jury alone, and the testimony would be incompetent. In the latter case the witnesses themselves were incompetent and their testimony should have been excluded. Furthermore, all the conditions attending upon the stopping of the trains were not known to the witnesses, nor were they embodied in the questions propounded to them. Whether an effort was made to stop the train, or whether it was thrown full speed ahead, and whether all the trucks left the track at the same time, would necessarily have an important bearing on the wreckage produced

by the stoppage of the train; and yet, these facts were wholly unknown to the witnesses and were not taken into consideration by them in forming the expert opinion. The question here involved was not the rate of speed of a train which a witness sees in motion, and has an opportunity to observe, nor the distance in which a train may be stopped under ordinary conditions, nor any other question relating to the ordinary operation of trains, or the duties of trainmen, with which railroad men are presumed to be familiar. The conditions were abnormal and unusual, and it certainly cannot be said that a few months experience around a logging camp, or a couple of years experience in braking or firing, of itself, qualifies one to express an opinion in such a case. If expert testimony is competent at all to establish the rate of speed in a case like this, such testimony must come from witnesses whose knowledge is derived from the observance of similar wrecks under similar circumstances, where the witnesses are familiar with the causes which produced them.

In *Northern Pac. R. Co. v. Hayes*, 87 Fed. 129, the trial court permitted a person struck by a train to state his opinion as to the rate of speed of the train which struck him at the time of the accident. The circuit court of appeals held that this was error, saying:

"The speed of the train which backed into the yard that night, and which struck the plaintiff, was a material question at issue, and much disputed on the trial. The plaintiff did not see the train at all. He was walking in the same direction, ahead of it, and was struck in the back, and thrown, he thinks, 20 or 30 feet; and he says he was never struck by a train before in that way, and had nothing to judge of as to the speed, except that one blow. Nevertheless he was allowed, against the defendant's objection, to give his opinion of the speed of the train, which he says was very fast, and, he would judge, between 15 and 20 miles an hour. We think this was error. He was simply guessing at the distance he was thrown, and from this, and from the force of the blow on his shoulder, he guessed at the speed of the train. It can hardly be assumed that the jury would not be influenced in

any degree by such testimony. Indeed, the very fact that it was held competent, and permitted to be given to the jury, would naturally be taken by them as a warrant that some credit might or should be given to an opinion so poorly founded. It is elementary that the admission of illegal evidence over objection necessitates a reversal. *Waldron v. Waldron,* 156 U. S. 380, 15 Sup. Ct. 383, and cases cited. In order that the court may not disturb a judgment for error, it should appear beyond a doubt that the error complained of did not and could not have prejudiced the rights of the party objecting. *Railroad Co. v. O'Reilly,* 158 U. S. 337, 15 Sup. Ct. 830."

And yet it would seem that a person struck by a moving train could form as accurate an opinion as to the rate of speed as the witnesses in this case, who simply viewed the wreck. In *Hellyer v. People,* 186 Ill. 550, 58 N. E. 245, it was held error to permit physicians to testify as to whether certain injuries could have been inflicted by a railroad train, running at the rate of thirty-five miles per hour. In *Chicago etc. R. Co. v. Lewandowski,* 190 Ill. 301, 60 N. E. 497, it was held improper to permit railroad men or others to testify that a person could or could not be struck by a freight train running at the rate of twenty-five or thirty miles per hour and survive. In the former case the court said:

"The subject of the proposed inquiry was a matter of common observation, upon which the lay or uneducated mind is capable of forming a correct judgment. In regard to such matters experts are not permitted to state their conclusions. In questions of science their opinions are received, for in such questions scientific men have superior knowledge and generally think alike. Not so in matters of common knowledge. (*Milwaukee and St. Paul Railway Co. v. Kellogg,* 94 U. S. 469.) 'Whenever the subject-matter of inquiry is of such a character that it may be presumed to lie within the common experience of all men of common education moving in the ordinary walks of life, the rule is that the opinions of experts are inadmissible, as the jury are supposed in all such matters to be entirely competent to draw the necessary inferences from the facts testified of by the witnesses.' (Rogers on Expert Testimony, Sec. 8; *Ohio and Mississippi*

*Railway Co. v. Webb,* 142 Ill. 404.) As a general rule, the opinions of witnesses are not to be received in evidence merely because such witnesses may have had some experience or greater opportunities of observation than others, unless such opinions relate to matters of skill and science. *Robertson v. Stark,* 15 N. H. 109; *Marshall v. Columbian Ins. Co.,* 7 Fost. (N. H.) 157; *Protection Ins. Co. v. Harmer,* 2 Ohio St. 452; *People v. Godine,* 1 Denio, 281; *Westlake v. St. Lawrence etc. Ins. Co.,* 14 Barb. 206; *Smith v. Gugerty,* 4 Barb. 614; *Folkes v. Chudd,* 3 Doug. 157; 1 Smith, Lead. Cas. (5th Am. Ed.), 630; *Daniels v. Mosher,* 2 Mich. 183."

In *Briggs v. Minneapolis St. R. Co.,* 52 Minn. 36, 53 N. W. 1019, the courts says:

"Courts have gone far enough in subjecting life, liberty, and property to the mere speculative opinions of men claiming to be experts, and we are not disposed to extend the rule into the field of mere hypothetical conjecture, which, in the case like the present, must necessarily have been so uncertain and unreliable as to be purely conjectural, and utterly unsafe for either court or jury to adopt."

See, also, the following cases: *Hopper v. Empire City Subway Co.,* 79 N. Y. Supp. 907; *Culbertson v. Metropolitan St. R. Co.,* 140 Mo. 35, 36 S. W. 834; *Smith v. Minneapolis St. R. Co.,* 91 Minn. 239, 97 N. W. 881; *Hammerberg v. Metropolitan Street R. Co.,* 62 Mo. App. 563; *Koehler v. New York Steam Co.,* 75 N. Y. Supp. 597.

All the other errors discussed were before this court on the former appeal. There is substantially no difference in the facts disclosed at the two hearings, and the former opinion has therefore become the law of the case as to all questions there decided. For the error in the admission of testimony the judgment is reversed and a new trial ordered.

Mount, C. J., Hadley, Fullerton, Crow, and Dunbar, JJ., concur.

Root, J., having been of counsel, took no part.