ANNIE O'BRIEN, as Administratrix, etc., of ROSE O'BRIEN, Deceased, Appellant, *v.* EDWARD H. RAYNOLDS, Respondent.

First Department, July 11, 1918.

**Negligence — action for death of passenger lawfully riding in elevator — breaking of operating cable — competency of expert testimony — opinion of expert based on insufficient facts.**

Where in a statutory action to recover for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant in failing to keep a passenger elevator which he operated in an apartment house owned by him in proper order and repair, in consequence of which an operating cable broke while the elevator was descending and decedent, who was lawfully riding therein, was killed, it was stipulated in behalf of defendant that the operating cable broke while the elevator was descending, and the plaintiff rested on the stipulation as presenting *prima facie* evidence of negligence, it was error to permit an expert to show *by his opinion*, based on some of the facts proved, disregarding, however, certain stipulated and uncontroverted facts and without the facts assumed being sufficient to predicate an opinion thereon, the existence of facts concerning the existence of which no other evidence was offered, and then to predicate further opinions on the facts, the existence of which was only so shown, and finally to state that the cause of the breaking of the cable was the existence of conditions and facts only shown by his opinion and which might have been proved or disproved by the testimony of the witnesses who inspected the elevator and appliances after the accident.

The expert was improperly permitted to give an opinion on insufficient facts and to invade the province of the jury.

APPEAL by the plaintiff, Annie O'Brien, as administratrix, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of March, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying plaintiff's motion for a new trial made upon the minutes.

*Francis X. McCollum* of counsel [*Peter P. McElligott,* attorney], for the appellant.

*Edward F. Lindsay* of counsel [*Philip J. O'Brien* with him on the brief; *Alfred W. Andrews,* attorney], for the respondent.

First Department, July, 1918.            [Vol. 183.

LAUGHLIN, J.:

This is a statutory action to recover for the death of plaintiff's intestate alleged to have been caused by the negligence of the defendant in failing to keep a passenger elevator, which he operated in an apartment house owned by him, in proper order and repair, in consequence of which an operating cable broke while the elevator was descending and the elevator became unmanageable and decedent, who was lawfully riding therein, was killed.

It was stipulated in behalf of defendant that the operating cable broke while the elevator was descending. That cable was three-eighths of an inch in diameter and consisted of six strands of thirty-nine fine wires each, and it had been installed about eight months before the accident. The average life of such cables is one year, evidently depending on the extent and character of the use, neither of which was shown. The plaintiff rested on the stipulation as presenting *prima facie* evidence of negligence.

The operator of the elevator called by defendant testified that before the accident the elevator operated properly, and as it was descending immediately before the accident he moved the handle to stop it at the ground floor, but it continued to descend to the basement and then suddenly, without action on his part, the handle reversed and was thrown out of his hand and the car started upward. The defendant presented evidence tending to show proper inspection and that none of the strands or wires was broken before the accident and that the cable was then suitable for such use. There were two operating cables, one for the upward motion and one for the downward motion. It does not appear otherwise than may be indicated by said stipulation which of them broke. The cable that broke was designed to stand a strain of 1,000 pounds. An inspector for the city who examined the cable after the accident, called by plaintiff, testified that it was very badly worn. That was stricken out and he then testified that the outer edge of the cable was worn off and worn smooth and that the ridges of the cable had been worn off, making a smooth surface. Other evidence offered by the plaintiff tended to show that the cable had worn somewhat smooth and was flattened at the point where it broke.

The defendant called an expert who was asked by a hypothetical question assuming some of the facts, but not the stipulated fact that the cable broke while the elevator was descending, whether he could state what caused the cable to break; and he answered that in his opinion one or more of the knives froze to the clips which might have been caused by the clip and knife becoming worn by the current of electricity passing from clip to clip over the knife and a piece of gravel or a particle of dust or " something " dropping " in there " and that when the electric current, by which the elevator was operated, passed from the clip to the knife, this would form an arc causing the metal of the clip or knife or both to fuse and the soft metal might stick to the clip and hold the knife and prevent the operator of the elevator from pulling the switch, and that when the elevator came down to the bottom the " automatic " would take hold of the shifting gear putting it in motion immediately and pull the lever out of the operator's hand or break " something," and that it might do any or all of these things, and that " the impact " on the shifting gear in such case was liable to break the cable and might break a new cable. This evidence was received over plaintiff's objection and exception that it was speculative and the precise question to be determined by the jury. There was no evidence other than the opinion of this witness, so given, that the metal fused or that any knife froze to a clip. The witness at first insisted that the fusing of the metal was embraced in the hypothetical question, but finally admitted that it was not. A motion was then made by plaintiff to strike out his testimony on the ground that there was no evidence of the facts on which the opinion as to the cause of the cable breaking was predicated. The motion was denied and plaintiff excepted.

It is not entirely clear that this was a case in which an expert could be asked the precise question to be determined by the jury (See *Dougherty* v. *Milliken*, 163 N. Y. 527, 533 *et seq.; McRorie* v. *Monroe*, 203 id. 426; *Schutz* v. *Union R. Co.*, 181 id. 33; *Welle* v. *Celluloid Co.*, 186 id. 319; *Jenks* v. *Thompson*, 179 id. 20; *Finn* v. *Cassidy*, 165 id. 584); but it is unnecessary to decide that point for the testimony given by the expert was incompetent. He was permitted to show

*by his opinion,* based on some of the facts proved, disregarding, however, certain stipulated and uncontroverted facts and without the facts assumed being sufficient to predicate an opinion thereon, the existence of facts concerning the existence of which no other evidence was offered, and then to predicate further opinions on the facts, the existence of which was only so shown, and finally to state that the cause of the breaking of the cable was the existence of conditions and facts only shown by his opinion and which might have been proved or disproved by the testimony of the witnesses who inspected the elevator and appliances after the accident. The employees of the defendant inspected the elevator and its appliances after the accident and no one was asked any question tending to show whether or not there was evidence that any of the metal constituting the clips or the knives had fused. The expert who gave this testimony conceded that if the metal so fused it would be observable to any one who understood the matter, and since the fusing referred to involved the melting of the metal, it would seem improbable that that could take place without leaving evidence thereof observable on ordinary inspection to one competent to inspect. The pieces of the cable were not preserved, and no one testified as to whether the break appeared to be new or old. The only witness who testified on the subject was called by the defendant and he said that he could not tell owing to the greasy condition of the cable, and that some of the strands might have been broken before the accident. Moreover, I think it is to be inferred, although no testimony was directed to the point, that the testimony of this expert is in conflict with the stipulation to the effect that the cable broke while the elevator was descending, for the effect of his testimony is that the cable did not break until after the elevator had reached the bottom. I think it is the fair inference from the evidence that if the cable broke while the elevator was descending, as stipulated, then the operator could not control it, and this was in effect admitted by the expert who testified in answer to the hypothetical question. This evidence of the expert was, therefore, highly prejudicial on the vital issue as to whether the breaking of the cable was due to the failure of the defendant to furnish and maintain a suitable cable;

and by attributing the breaking of the cable to causes for which defendant would not be responsible and shown to exist only by the opinion of the expert when the existence or non-existence of some or all of such causes might have been shown otherwise, I think, without deciding whether an opinion may be predicated upon an opinion, which is doubtful (See *Walker* v. *Fields*, 28 Ga. 237; Thomp. Trials [2d ed.], § 603), that the expert was improperly permitted to give an opinion on insufficient facts and to invade the province of the jury. (*O'Doherty* v. *Postal Tel.-Cable Co.*, 113 App. Div. 636; *Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 645; *Koehler* v. *New York Steam Co.*, 71 App. Div. 222; *Green* v. *Hornellsville & C. R. Co.*, 24 id. 434; *White* v. *Prudential Ins. Co.*, 120 id. 260; *Davis* v. *Maxwell*, 108 id. 128, 133; *Welle* v. *Celluloid Co., supra*, 322; *Schutz* v. *Union R. Co., supra*, 37; *Dougherty* v. *Milliken, supra*.)

It follows, therefore, that the judgment and order should be reversed and a new trial granted to appellant, with costs to abide the event.

CLARKE, P. J., DOWLING, SHEARN AND MERRELL, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to appellant to abide event.