## DENA UGGEN v. BAZILLE & PARTRIDGE.[1]

October 3, 1913.

Nos. 18,138—(244).

**Master's failure to warn servant — burden of proof.**

1. In an action based upon the alleged negligence of the master in failing to warn the servant as to the dangers attending his work, negligence is

[1] Reported in 143 N. W. 112.

---

Note.—The authorities on the question of the duty of a master to warn or instruct servants, generally, are collated in an elaborate note in 44 L.R.A. 33. And for the master's duty to instruct servants as to danger to which he is exposed, see note in 41 L.R.A. 143. And upon the duty to protect or warn against dangers not reasonably to be apprehended, see note in 21 L.R.A.(N.S.) 89.

not presumed, and the burden is upon the plaintiff to show that such warning was not given.

### Evidence — when admissible.

2. To render the testimony of a witness that he did not hear such warning admissible to prove that it was not given, it must appear that the circumstances were such that he probably would have heard the warning had it in fact been given.

### Impeachment of witness — inconsistent prior statements.

3. Prior statements of a witness inconsistent with his testimony are admissible for the purpose of impeachment, although they state what he understood instead of the facts upon which such understanding was based, and it was error to exclude such statements.

Action in the district court for Ramsey county by the special administratrix of the estate of Eric Uggen, deceased, to recover $5,000 for the death of plaintiff's intestate. The answer specifically denied that the injuries received by the intestate, or his death, were in any manner whatsoever caused by the negligence of the defendant, and alleged that they were caused on account of the negligence of the intestate; that at the time of the accident and prior thereto the intestate appreciated and assumed every danger, risk and hazard in any manner whatsoever connected with his work or his presence at or about the building or elevator shaft that in any manner contributed to the accident and death. The case was tried before Dickson, J., who denied the motion of defendant for a directed verdict in its favor, and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed as to the motion for judgment, and reversed as to the motion for a new trial, and new trial granted.

*Price Wickersham,* for appellant.

*Kennedy & Kennedy* and *W. B. Douglas,* for respondent.

TAYLOR, C.

On April 16, 1910, Eric Uggen, while at work painting in the elevator shaft of the St. Paul Hotel building, then in process of construction, was struck by the counterweight attached to one of the ele-

vator cars and instantly killed. Plaintiff, as administratrix of his estate, brought this action against William J. Hoy, the Pioneer Plastering Co., a corporation, and Bazille & Partridge, a corporation, to recover damages on the ground that they were all chargeable with negligence.

Although the defendants were all engaged in work upon the same building, they were independent contractors. Hoy had the contract for erecting the superstructure, the Pioneer Plastering Company the contract for plastering, and Bazille & Partridge the contract for painting and decorating. At the trial plaintiff dismissed the action as to defendants Hoy and the Pioneer Plastering Company, and recovered a verdict against defendant Bazille & Partridge. The last named defendant made the usual alternative motion for judgment notwithstanding the verdict or for a new trial, and appealed from an order denying both motions.

The elevator shaft extended from the sub-basement to the top of the building, and was to be divided vertically into three compartments for the purpose of operating a separate elevator car in each compartment. The iron work of the shaft, including the guides which hold the elevator cars in position as they move up and down and the guides which hold the counterweights in position, had been completed prior to the accident, but the partitions between the different compartments had not then been built. To avoid confusion the three compartments were designated at the trial as shaft No. 1, shaft No. 2, and shaft No. 3, counting from left to right when standing upon the landing and facing them. The elevator car had not been installed in shaft No. 1, but had been installed and was in use in both shaft No. 2 and shaft No. 3. A counterweight weighing more than a ton was attached to each of these cars by means of a cable and pulleys and moved in the reverse direction from that of the car, going up as the car went down and going down as the car went up. The counterweights of both cars ran in shaft No. 3. That of the car in shaft No. 2 near the back of shaft No. 3, and that of the car in shaft No. 3 near the right hand or outer side of that shaft. There was no counterweight in shaft No. 2, and neither car nor counterweight in shaft No. 1.

On the evening of April 15, 1910, defendant, Bazille & Partridge,

placed a crew of which Eric Uggen, the deceased, was a member at work painting the iron work of these shafts. They began at the upper or the eleventh floor. In shaft No. 1 plank were placed across the opening in the floor to form a platform upon which the men stood while at work. In shaft No. 2 and shaft No. 3 the elevator cars were run to the proper height, and the men stood upon the top of these cars while at work. As the work progressed the cars were lowered from time to time as convenience required and the platform in shaft No. 1 was moved from floor to floor. The crew worked all night, and on the next evening resumed their work in the same manner. Between six and seven o'clock on this evening the plastering company asked for one of the cars to move some plastering material. At this time the platform and the two cars were at the second floor and at practically the same height. The witness Krueger and the deceased were upon the car in shaft No. 2. The foreman, Shelgren, directed one of them to step out upon the landing and the other to step over upon the car in shaft No. 3. Krueger stepped out upon the landing and Uggen stepped over upon the other car. Shelgren then entered the vacated car, called out that he was going down, and inquired whether everything was all right. Some one on the other car answered: "All right." He ran the car to the first floor, the foreman of the plastering company there entered it, and Shelgren then called out that the car was going up and inquired whether everything was all right. Some one on the other car again answered: "All right." The car was run to the second floor where Shelgren stepped out, leaving it in control of the foreman of the plastering company. Before the car was again moved Shelgren once more called out that the car was going up and inquired whether everything was all right. Some one on the other car again answered "All right." The car then moved upward, and Uggen standing upon the top of the stationary car in shaft No. 3 began painting the bottom of an iron beam. In doing so he bent over so that he placed his head between the guides which held the counterweight of the moving car in position. The witness Woidemann looked up and saw the counterweight descending immediately above Uggen. He cried out instantly, but the warning was too late.

The complaint charged in substance that the defendant directed

Uggen to work in a dangerous place, and negligently failed to instruct or warn him concerning the location and movements of the counter-weights and the dangers arising therefrom. Plaintiff based her claim to recover upon this charge, and the pivotal question at the trial was whether such warning had or had not been given.

When the crew began work in the shafts at the eleventh floor on the evening before the accident, Shelgren, the foreman, warned them concerning the danger of the work and directed them to be careful. The witnesses upon both sides agree thus far. The plaintiff however contends that nothing was said concerning the location and movement of the counterweights, while defendant contends that that matter was fully explained.

Negligence is not presumed in such cases, and the burden is upon the one who charges negligence to prove it. This is true even though it involve the proving of a negative. Where the gist of the action is the alleged wrongful omission to give a warning, some evidence must be presented reasonably tending to show that such warning was not given, or the action must fail. Cotton v. Willmar & Sioux Falls Ry. Co. 99 Minn. 366, 109 N. W. 835, 116 Am. St. 422, 9 Ann. Cas. 935.

Plaintiff sought to show by the witness Carlson that defendant failed to give warning in reference to the counterweights. Carlson asserted that he did not hear, or at least did not remember hearing, any such warning. He also stated however that he was personally cautioned concerning his own work, and did not pay much attention to what was said to the others for the reason that he worked in shaft No. 1, was busy fixing his platform, and knew that he would not be affected by the operation of the elevator cars. Plaintiff did not offer any further testimony upon this point in her case in chief, but, during the rebuttal the witness Woidemann, who worked with Carlson in shaft No. 1, and the witness Erickson who worked in shaft No. 3, testified that they did not remember having heard any explanation as to how the counterweight of the car in shaft No. 2 ran in shaft No. 3. Woidemann further testified that he was cautioned as to his own work in shaft No. 1. Erickson's testimony leaves it uncertain whether he was present when the instructions were given, and he was so

deaf that, if present, it is doubtful whether he could have heard or understood them unless able to watch the lips of the speaker. This negative testimony was weakened somewhat by cross-examination, and defendant presented affirmative testimony that the warning was in fact given.

Defendant bases its claim for judgment notwithstanding the verdict upon the ground that plaintiff failed to show that the circumstances were such that the witnesses, Carlson, Woidemann, and Erickson, ought to have heard and ordinarily would have heard the warning as to the counterweights, had it been given.

In order to prove that an instruction or warning was not given by the testimony of a witness that he did not hear it, the one proffering such testimony is ordinarily required to show, as a condition to its reception, that the circumstances were such that the witness probably would have heard the instruction or warning had it in fact been given. The rule and the reasons therefore are well explained in Cotton v. Willmar & Sioux Falls Ry. Co. supra. It is true that plaintiff made no such showing in the present case, but the cross-examination disclosed that Carlson and Woidemann were present and a part of the crew to which the foreman was talking when he gave the alleged warning. While they listened to the warning given to themselves concerning the dangers attending their own work, yet, knowing that they would not be endangered by the operation of the cars, they apparently gave scant attention to what was said to the others concerning that matter. Notwithstanding this, we are not prepared to say as a matter of law that their testimony is wholly without probative force when taken in connection with the permissible inference, from his conduct, that Uggen, at the time of the accident, did not have the movement of the counterweight then in mind. A new trial must be granted for reasons hereinafter stated, and the facts may appear more clearly at another trial.

Defendant's assignments of error, numbered 11 to 18 inclusive, challenge the rulings of the court in excluding questions asked by defendant in cross-examination. We are unable to sustain these rulings and are of opinion that the cross-examination was unduly restricted.

The men working with Mr. Uggen at the time of his death were gathered together three days thereafter and questioned by defendant's attorney, and this examination was taken down in shorthand by a court reporter.    Assignments numbered 12, 14 and 17 allege error in excluding the following questions asked the witness Carlson after he had admitted being present and giving his statement at that examination:

Q. "Then wasn't this question put to you: 'Let me understand you clearly; did you understand from what Mr. Shelgren said at the time that he was attempting to warn you men of the exact danger that Mr. Uggen encountered? Did you understand that at that time?' 'Why, certainly.    That is, I may say this, that I had worked in elevator shafts before and I was well aware of the fact it was dangerous, and I thought that the rest did, but speaking for myself, I knew what danger was connected with it.'    Didn't you make that answer to that question?"

Q. "When you were in the office at that time, in addition to the questions that were taken down by the court reporter, you also said in the presence of these men, that there was no question but that the crew understood from what Shelgren had said when the men started to work, that all of them outside of Krueger and Serrafin had been told about the danger of the counterweight; isn't that so?"

Q. "Now, at the time that you were in my office on April 19, 1910, wasn't this question asked you and didn't you make this answer: 'But outside of your general knowledge on that subject (discussing the instructions that Shelgren gave to the crew) you understood from what Mr. Shelgren said at the time that he was in fact warning you men of the very danger that Mr. Uggen later encountered?' A. 'Yes, sir.' "

These questions were excluded upon the ground that they had reference to what the witness understood from the statements of Shelgren.    Of course such declarations could not be received for the purpose of proving what Shelgren had said, but they were not offered for that purpose.    Defendant explained fully that they were offered for the purpose of impeaching the witness, by showing that immediately after the occurrence he had made statements which were inconsistent

with his assertion at the trial that he had no knowledge that anything had been said by Shelgren in reference to the counterweights.

Prior statements of a witness inconsistent with his testimony are admissible for the purpose of impeaching, although they state what he understood instead of the facts upon which such understanding was based. 2 Wigmore, Evidence, §§ 1018, 1037, 1040, 1041. "This inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done. On a comparison of the two utterances, are they in effect inconsistent? Do the two expressions appear to have been produced by inconsistent beliefs?" 2 Wigmore, § 1040. After adverting to the fact that some courts reject declarations of opinion in such cases, the author says: "This is unsound, (1) because the declaration is not offered as testimony (ante 1018), and therefore the Opinion Rule has no application, and (2) because the declaration in its opinion-aspect is not concerned, and is of importance only so far as it contains by implication some contradictory assertion of fact. In short, the only proper inquiry can be, is there within the broad statement of opinion on the general question some implied assertion of fact inconsistent with the other assertion made on the stand? If there is, it ought to be received, whether or not it is clothed in or associated with an expression of opinion." 2 Wigmore, Evidence, § 1041.

While the ruling of the court is not without authority to support it, the better reason and the weight of authority support the rule stated by Professor Wigmore.

The statements, embodied in the questions asked Carlson, if made by him, were clearly inconsistent with his testimony to the effect that he had not heard Shelgren say anything concerning the counterweights. In view of the fact that the plaintiff's case rested largely upon this negative testimony given by Carlson, and that the case was submitted to the jury upon the theory that defendant was liable if it failed, "to give adequate and sufficient and plain and intelligent instructions to Mr. Uggen concerning the danger of this counterweight," the exclusion of these statements was clearly prejudicial error.

So much of the order appealed from as denies the motion for judgment notwithstanding the verdict is affirmed, and so much thereof as denies the motion for a new trial is reversed and a new trial granted.