# DENA UGGEN v. BAZILLE & PARTRIDGE.[1]

November 20, 1914.

Nos. 18,838—(94).

**Death of servant — warning of danger — evidence.**

   1. Evidence in an action against a master, to recover damages for the death of a servant killed while engaged in painting the interior of an elevator shaft by the counterweight of a car moving in an adjacent shaft, considered and *held* sufficient to sustain a finding that defendant failed to give deceased sufficient warning before sending him into the shaft where he was killed.

**Motion to discharge the panel — conduct of counsel.**

   2. Record *held* to disclose no basis for imputation of bad faith on the part of plaintiff's counsel in referring, during his examination of a juror, to a liability insurance company as the real party in interest, and hence denial of defendant's motion to discharge the panel on account thereof was not error.

After the former appeal reported in 123 Minn. 97, 143 N. W. 112, the case was retried before Catlin, J., and a jury which returned a verdict of $5,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Wickersham & Churchill,* for appellant.
*Douglas, Kennedy & Kennedy,* for respondent.

PHILIP E. BROWN, J.
This cause was retried to a jury after a reversal reported in 123

[1] Reported in 149 N. W. 459.

---

Note.—The authorities on the general question of the master's duty to warn or instruct his servants are gathered in a note in 44 L.R.A. 33. And as to the master's duty to instruct servant as to danger to which he is exposed; see note in 41 L.R.A. 143. And for the master's duty to protect or warn servant against dangers not reasonably to be apprehended, see note in 21 L.R.A.(N.S.) 89.

Minn. 97, 143 N. W. 112. Plaintiff had a verdict. Defendant appealed from an order denying its alternative motion.

The nature of the action and the facts showing the general situation are sufficiently stated in the reported case. In addition, however, to what is there set out, it appeared on the second trial that elevator shaft No. 3 was less than six feet square; that deceased was directed to work in shaft No. 2 up to the time he stepped upon the car in shaft No. 3 almost immediately preceding the accident; that no directions or warnings were then given except that the car in shaft No. 2 was about to go up; and that the workman Borchard, who was then standing on the car in shaft No. 3, was the person who responded "all right" before the other car moved.

1. On the former appeal the main contention was whether defendant's foreman, before starting deceased to work on the day preceding the accident, gave the same warning here claimed by defendant as to the dangers incident to the employment in the elevator shafts. Plaintiff made the point in her brief that this warning, if given, was insufficient, but this feature was not particularly pressed, was obscured by other contentions, and only collaterally considered. She now squarely presents the same contention, with others. Whatever instructions or warnings were given affirmatively appear, and there were none other than those about to be recited, all of which were given on the evening of the day preceding the accident. The record discloses that before commencing the work and after a number of the workmen, including deceased, were assembled, some of whom were to work in shaft No. 1, in which no car had been installed, some in shafts Nos. 2 and 3, and others on the outside of the shafts, defendant's foreman gave them some instructions and warnings, when they were close thereto. He testified as follows in this regard:

"The exact wording, of course, I don't remember now. In substance I told him to be very careful in the work in there, explaining how the counterweights were running, that the counterweight of car No. 1 in shaft No. 2 was running in shaft No. 3.

"Q. Now, you say car No. 1?

"A. In shaft No. 2; the first, shaft No. 1, has no car in, so I would

like to refer to the car in shaft No. 2 as car No. 1, being that is only two cars in the shaft."

"Q. Now, what was the substance of what you said to Uggen at that time about where the counterweights ran ? Tell us that now.

"A. I told him that the counterweight for car No. 2 was running in shaft No. 3, to be careful when the cars were moved.

"Q. Be careful about what ?

"A. Well, I don't remember if I said anything more; that is about the substance of what I said at that time." Later the witness admitted that these statements were made to the assembled workmen and not particularly to deceased.

Concerning the same matter, one of the workmen, the witness Borchard, testified:

"Q. Now, before the men started to work in the shaft at the eleventh floor, what did Mr. Shelgren say to the men then ?

"A. Well, he explained to us about the running of the elevator and the counterweights in the opposite shaft."

"A. They were that when the elevator in shaft No. 2 was running, why, the weight would move in shaft 3, and that when the elevator in shaft No. 3 was running, why, the weight would be going up and down on the side of the elevator."

"Q. * * * And where, if at all, did he say that the counterweights that were attached to the cable for the middle elevator run in the righthand shaft ?

"A. I don't know.

"Q. You don't remember ?

"A. I don't remember that."

On plaintiff's part, as on the former trial, there was testimony of a negative nature by some of the workmen who were present when the alleged instructions were given, to the effect that they did not hear the warnings concerning the counterweights.

Under the facts a duty devolved upon defendant to instruct and warn deceased with reference to the running of the counterweights in shaft No. 3, before directing him to enter therein. Furthermore, the instructions given, in order to fill the full measure of this duty, must

have been sufficiently clear and plain to be intelligently apprehended. Small v. Brainerd Lumber Co. 95 Minn. 95–98, 103 N. W. 726. Or, as otherwise expressed, they must have been "sufficiently clear, plain and specific to be intelligently observed" (Fitzgerald v. International Flax Twine Co. 104 Minn. 138, 146, 116 N. W. 475, 478); defendant's duty in the premises being not merely to advise deceased of existing conditions, but to see to it that he comprehended the risk and understood the danger. Gillespie v. Great Northern Ry. Co. 124 Minn. 1, 6, 144 N. W. 466. The question, then, is: Can it be held as a matter of law that plaintiff failed to show defendant's neglect, or that deceased must be deemed, under the instructions given or otherwise, to have comprehended the risk incurred in passing on the car in shaft No. 3, and understood the danger of remaining and working there while the other car was in motion? Accepting for the present defendant's version of the instructions as verity, we answer in the negative. The running of two counterweights so near each other and in such a small compartment presented an unusual and dangerous situation to a person on the car in shaft No. 3, requiring greater particularity of warning than can be found in the testimony. Defendant's foreman details no words of explanation either as to the counterweight of the car in shaft No. 3, or as to which weight was used in connection with the car in shaft No. 2, or with reference to the movement of the weights being converse to that of the cars, though Borchard testified shortly in the latter regard. Moreover, the extent of the foreman's directions must be considered in connection with the fact that he did not then contemplate working deceased in shaft No. 3, but in shaft No. 2, where he would incur no danger from the weights. Nor can the usual presumption of care for one's own safety be ignored in considering whether deceased comprehended the danger.

Furthermore, as stated in the former opinion, the negative testimony, which is clearer than on the former trial, cannot be wholly disregarded. If the instructions given had been unquestionably sufficient, and it had been conclusively established that deceased heard them, this evidence would be of doubtful value; but such is not this

case. In Seaboard Air Line v. Shanklin, 148 Fed. 342, 345, the court, in considering oral instructions, said:

"But there are certain infirmities which inhere in oral instructions given as a rule of conduct. The language in which they are framed is passing, and not fixed. They are uncertain, and therefore open to constructions partaking of the bias and disposition of the employees. * * * At last, as here, when their existence, meaning, and import are called in question, when these have a vital bearing on the rights of litigants, it is left to the fallible and imperfect memory of witnesses to say that they existed, what they were, and what they meant."

The court there held, in a case quite analogous, on principle, to the present, that the issue was for the jury. We hold likewise.

2. One of the jury panel, during his examination by plaintiff's counsel, stated that he knew a Mr. Neely, but that the latter's connection with the insurance company which insured defendant against liability in the case on trial would not affect him in any way. Plaintiff's counsel then inquired: "The fact that R. M. Neely & Co. are the real party in interest wouldn't affect you?" Whereupon defendant's counsel moved to discharge the panel because of the statement before them that someone other than defendant was the real party in interest, and when, during the argument of the motion, he was called to the stand by defendant, testified that while he was employed in the case by Neely & Co. or the Employers' Liability Assurance Co., as their attorney, he was not paid by them but by defendant, and that the latter was the real party in interest. Plaintiff's counsel thereupon withdrew the question complained of, and admitted that Neely & Co.'s interest was as shown by the testimony of defendant's counsel. The latter, however, insisted upon his motion, which the court denied. We find no basis for an imputation of bad faith on the part of plaintiff's counsel, and therefore no ground for reversal in the ruling. Granrus v. Croxton Mining Co. 102 Minn. 325, 328, 113 N. W. 693.

Order affirmed.