### PIERCE v. SANDEN.

Circuit Court of Appeals, Eighth Circuit.
November 1, 1928.

No. 8127.

Edwin D. Ford, Jr., of Minneapolis, Minn. (Kingman, Cross, Morley & Cant and Harold G. Cant, all of Minneapolis, Minn., on the brief), for appellant.

Alphonse A. Tenner, of Minneapolis, Minn. (Sweet & Johnson and Thomas E. Sands, Jr., all of Minneapolis, Minn., on the brief), for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and P.HILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. This is a suit to recover damages for personal injuries sustained by appellee at or near the intersection of University avenue and Fry street in the city of St. Paul, through collision with an automobile operated by appellant. At the time of the accident appellee was seeking to board a street car on University avenue which was approaching the intersection stated. In paragraph 5 of the petition the negligence assigned was the alleged violation of the provisions of Ordinance No. 5366 of the City of St. Paul, to wit:

"Every person in charge of a vehicle approaching any street car, which has stopped or is about to· stop for the purpose of discharging or taking on passengers must not approach nearer than 10 feet back of such street car except where there is a properly designated zone of safety, until such car shall have discharged or taken on its passengers and until the gates of such street car are closed."

The case was submitted by the court principally upon the provisions of section 19, chapter 416, Session Laws of Minnesota 1925, which, so far as material here, reads as follows:

"The operator of a motor vehicle, when passing a car of a street railway running in the same direction, shall pass only to the right thereof, and in approaching a car of a street railway which has been stopped or is about to stop to allow passengers to alight or embark, he shall bring said vehicle to a full stop not less than ten feet behind said street car and shall remain so stopped until all gates of said street car are closed."

It will be observed that the statute and ordinance, while not identical, are similar in import.· It was upon the construction of these provisions of law that the case, as submitted, turned.

The evidence respecting the relative position of the street car and automobile is con-fl cting. This will readily be perceived from

the statements of opposing counsel in their briefs. Counsel for appellant say:

"Pierce was driving west toward Minneapolis about 1 o'clock in the afternoon of the day in question on University avenue in the city of St. Paul between Snelling avenue and Fry street. He was traveling parallel with and near the front end of a Minneapolis bound street car for the latter half of that block. The usual stopping place for Minneapolis bound street cars at the intersection of University avenue and Fry streets is on the east or near side thereof. As the street car and Pierce thus approached this intersection and the said regular stopping place, but some little time before they actually arrived there, Mrs. Sanden left the north curb of University avenue and started toward the car tracks for the purpose of boarding the street car. Pierce saw her leaving the curb and at that time he was about 30 feet to the east of her and traveling about 15 miles an hour, possibly a little faster than the street car. He was about even with the front end of the street car."

Concerning the same situation counsel for appellee make the following statements:

"It appears from the evidence that, when the street car first began to slow down for Mrs. Sanden in its usual customary manner, the Pierce automobile was either along the side of the street car (not ahead of it) or some distance in back of the street car and approaching it. There is no dispute about the fact that both the street car and appellant's automobile commenced to slow down because of the presence and actions of Mrs. Sanden at the time and place in question, that is to say, that her position at about the time she was in the act of stepping off the curb indicated to both the motorman and Mr. Pierce her intention to board said street car, but there is a conflict in the testimony as to where the street car and the automobile were and what they did immediately after it became known to them that Mrs. Sanden intended to board the street car, and this conflict in the testimony presented jury questions."

There is support in the testimony for both contentions. The street car in question admitted passengers only at the rear gates. But three errors of which this court can take cognizance are assigned. The first two deal with instructions given by the trial court; the third, with the exclusion of evidence offered by appellant for the purpose of impeaching appellee's chief witness.

The first of the instructions, to which error is assigned, will be better understood if the proceedings which led up to it are set out. At the conclusion of the main charge the jury had retired to deliberate; thereafter it returned to the courtroom and the following took place:

"The Court: Gentlemen, have you any report to make to the court at this time?

"The Foreman: May it please the court, there are two or three members of the jury that would like you to read that Minnesota law and define what duties are imposed on a motorist under that statute. Your honor, the question in point is this, probably you can explain it and make it clear, the question is this, supposing that a street car and a car came down the street parallel to each other, for instance say half a block, and came to an intersection, does the car have to come to a stop and drop ten feet behind the rear gate or may he proceed.

"A Juryman: Your honor, if I may, the point is this: If the car is approaching an intersection and both are parallel with each other, as some of us get that law it was in effect that when the car is slowing down in approaching an intersection can the motorist then go along and try to get by that car or does he have to fall back that ten feet?

"The Court: You mean, as the court understands it, if prior to the street car reaching that place at or about the intersection where it slows down to stop the street car and the automobile are traveling parallel and side by side, then is it the duty under that statute or is it not for the automobile to drop back behind the car ten feet before it stops? Is that the exact question?

"A Juryman: Yes, sir, that is the point, your honor; that is all, your honor, that is bothering us.

"The Court: You are told as a matter of law that one driving an automobile parallel with a street car may lawfully pass that street car anywhere between intersections where the street car stops to discharge and take on passengers, but if an automobile so traveling parallel and side by side with a street car between intersections fails to and has not passed the street car before the car reaches such intersection or place where it usually stops to take on passengers and discharge the same it is his duty at the time the street car begins to slow down for the purpose of stopping to drop behind the street car at least ten feet and there remain stopped until all the gates are closed."

To this instruction an exception was preserved. We think this instruction contains an erroneous and unpractical construction of the language of the statute. It cannot be

said, as matter of law, that an automobile "traveling parallel and side by side with a street car" is "approaching" that street car, and that, if it has failed to pass the street car before reaching the place where the latter stops to receive and discharge passengers, it must drop back at least 10 feet behind the street car and there remain until the gates are closed. Its duty in this respect must depend in some measure upon its relative position, particularly to the gates of the street car. The undisputed testimony is that this car admitted passengers only at the rear gates. There was substantial testimony to the effect that appellant had passed these gates when the accident occurred. There was likewise testimony that he had reached a point parallel with the front of the street car. At best, the evidence on this point was conflicting, and the question was for the jury. The case of Morss v. Murphy Transfer & Storage Co., 170 Minn. 1, 211 N. W. 950, most nearly applies to the case at bar. Therein it is said:

"The statute commands that vehicles must stop ten feet behind the gates. When? Approaching the street car means coming near it."

■ It would be impracticable, and a menace to street car passengers and to traffic alike, if an automobile, which had reached a position abreast of a car, and in advance of the gates of entrance and exit, were required to drop back to a position of 10 feet behind the car. This consideration was a controlling one with the jury as evidenced by the questions asked, and the instruction given in response undoubtedly had great weight in shaping the verdict. The correct interpretation of this statute depends largely upon the meaning of the word "approaching." In our judgment, an automobile traveling alongside of and parallel with a street car is not approaching it, in the sense in which that word is used in the statute. This seems to be the view of the Minnesota Supreme Court. The act evidently has in contemplation a motorcar coming from behind the street car and approaching in it that sense. It is also necessary, in fixing the responsibility of the driver of an automobile, to determine the point at which the street car is to be conceived as "about to stop." Decreasing speed at some distance before an intersection is reached is not necessarily or usually the equivalent of those words. It may well be that from the facts in the case, as resolved by it, under proper directions, the jury might have found that appellant had violated the provisions of this ordinance and was guilty of negligence

for that reason, but this instruction left little or no scope for its deliberations.

■ The next instruction to which exception is taken is the following:

"The effect of this statute you are told, was to modify to some extent the rule of ordinary care that I have defined for you on the part of the person who was about to enter upon or be discharged from a street car to this extent, that a person who was about to enter upon a street car that is stopped or about to stop or to get off from a street car that has stopped or is about to stop is not required by law to look and listen for cars that may be coming in the same direction the street car is coming. Such person has a right to rely on the assumption that all persons will obey the law of the state, while under ordinary circumstances such persons in the absence of the statute might be required to look and listen for approaching cars and would be guilty of contributory negligence if they did not so look and listen; but you are told that the general rule is modified to the extent I have told you with reference to accidents that may happen where a street car is stopped or is about to stop."

■ This charge concerning contributory negligence was too broad generally, and certainly with respect to the facts in this case. The great weight of authority is not to the effect that a person is absolved from all care in entering upon a position of possible danger simply because a statute or other rule of conduct imposes a certain degree of care and precaution upon vehicles. No one is permitted to rely thereon explicitly and without the exercise of such care as the situation demands in the instant case. Per Haleen v. St. Paul City Ry. Co., 141 Minn. 289, 170 N. W. 207; Ruddy v. Ingebret, 164 Minn. 40, 204 N. W. 630; Mabs v. Park & Tilford, 200 App. Div. 75, 192 N. Y. S. 664; Bradley v. Missouri Pacific Ry. Co. (C. C. A. 8) 288 F. 484; Baltimore & Ohio R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167.

■ Of course, if the statute relied upon did not apply to the facts in this case, then the ordinary rule governing contributory negligence prevailed, and the instruction is clearly erroneous for that reason. There was testimony from which contributory negligence might legitimately have been found.

■ The third assignment has to do with the exclusion of testimony offered by appellant for the purpose of impeaching one Kluegel, the main witness for appellee. Kluegel's testimony tended strongly to establish negligence on the part of appellant. On cross-examination he was asked:

"At the time you volunteered your name to Mr. Pierce, did you have any conversation with him?

"A. No, sir.

"Q. Did you not say to him at that time in substance, 'You are not to blame,' meaning Mr. Pierce?

"A. No, sir."

Appellant, on being recalled, stated that Kluegel, at the time of the accident, had volunteered the statement that Pierce was not to blame. . The objection to this testimony was sustained. Under the great weight of authority, the testimony should have been admitted. Uggen v. Bazille & Partridge, 123 Minn. 97, 143 N. W. 112; Long v. Weare Township, 195 Mich. 706, 162 N. W. 332; McClellan v. Railway Co., 105 Mich. 102, 62 N. W. 1025; Shinkle v. McCullough, 116 Ky. 960, 77 S. W. 196, 105 Am. St. Rep. 249; Whipple v. Rich, 180 Mass. 477, 63 N. E. 5.

The admission is solely for the purpose of contradicting the witness' testimony in chief. As said in the case last cited:

"The statement of the witness, although a general conclusion, tended to contradict his testimony as to particular facts which indicated a contrary conclusion."

For the reasons stated, the judgment is reversed, and the case remanded for a new trial.