MARTELL, Respondent, vs. KUTCHER and wife, Appellants.

*November 10, 1927—February 7, 1928.*

*Workmen's compensation: Assignment by compensation employer to employee of claim against tortfeasor: Consideration: Who may challenge validity: Automobiles: Motorcycle cop in pursuit of offender: Collision with automobile turning without signal: Questions for jury.*

1. The beneficent provisions of the workmen's compensation act (secs. 102.01 to 102.41, Stats.) must be liberally construed in order to effect the purpose of its enactment.   p. 23.

2. Under sec. 102.29, Stats., a municipal corporation is authorized to assign its cause of action to an injured employee before the expiration of the period of ninety days mentioned as a limitation in the statute, and the action may then be prosecuted in the name of the employee; and such assignment cannot be said to be without consideration, in view of the assumption by the employee of liability for costs, expenses, or loss of time which the employer would otherwise be required to bear. pp. 24, 25.

3. Although a municipal corporation cannot without consideration transfer its property, if it does so, only the corporation or a taxpayer may object; but even assuming the assignment to be without consideration, the city, on the successful termination of an action brought by the employee, would be estopped from claiming the invalidity of the assignment and would be relegated to pursue its rights on the recovery of its interest in the judgment.   p. 25.

4. In an action by the plaintiff, a motorcycle policeman, to recover for injuries sustained in a collision with the defendant's automobile, evidence that plaintiff, in pursuit of a car driven by a person whom he deemed drunk, turned to the left to pass the automobile driven by the defendant, and that the defendant without warning turned to the left to enter upon an intersecting street, thus colliding with the plaintiff, is *held* sufficient to sustain answers of the jury in favor of the plaintiff on the questions of the defendant's negligence and on proximate cause.   p. 28.

5. Although the supreme court is of the opinion that the physical situation is indicative of a high degree of speed on plaintiff's part, and as an original proposition, from the record, would find him guilty of contributory negligence, it is *held,* there being credible evidence to sustain the verdict of the jury to the contrary, that such verdict will be permitted to stand. pp. 29, 30.

6. General questions to the jury on the *voir dire* examination as to whether any member of the jury did business with certain insurance agents, or were in any way interested or did business with a named indemnity company, there being no allusion to the fact that defendant's automobile was insured by such company or its agents, were proper.  p. 30.

7. Cross-examination of defendants' witnesses as to whether they were interested in the insurance company that had insured the risks or were acting as the company's agents, was proper, as the inquiry was a material one and went directly to the credibility of such witnesses on the subject of their interest.  p. 31.

8. A statement by plaintiff's counsel in the closing argument that out of any amount awarded the plaintiff would be compelled to repay the employer or its insurer the amount of compensation paid, is *held* not prejudicial error, in view of a previous similar statement by defendants' counsel and the lack of an exception or objection in proper form.  pp. 31, 32.

9. Where respondent's brief contained a misstatement of the evidence, which, in view of its emphasis by being in bold and large type, manifested an intention to mislead the court, no costs will be allowed for respondent's brief.  p. 32.

APPEAL from an order of the circuit court for Winnebago county: FRED BEGLINGER, Circuit Judge.  *Affirmed.*

The appeal is from an order overruling defendants' plea in abatement and from a judgment in plaintiff's favor.

*Harry V. Meissner* of Milwaukee, for the appellants.

For the respondent there was a brief by *Rubin, Zabel & Rouiller,* attorneys, and *W. B. Rubin,* of counsel, all of Milwaukee, and oral argument by *C. F. Rouiller.*

The following opinion was filed December 6, 1927:

DOERFLER, J.  The action is brought to recover damages for personal injuries.  On September 6, 1924, the plaintiff, an employee of the city of Menasha as a motorcycle police officer, sustained personal injuries in said city while in the discharge of his duties, in a collision with the automobile owned by the defendant *Frank Kutcher,* operated at the time by his wife, the defendant *Emma Kutcher.*  Both the

plaintiff and the city were at the time of the accident subject to the provisions of the workmen's compensation act.

Upon proceedings had before the industrial commission, the commission awarded the plaintiff compensation. The amount awarded was paid by the city to the plaintiff, and on July 23, 1926, the latter executed and delivered to the city the following receipt, to wit:

"In consideration of $1,299.60 to me in hand paid by the city of Menasha, the receipt whereof is hereby confessed, I hereby release and forever discharge said city of Menasha from all claims and demands which I may have against it by reason of injuries received by me while in the employ on or about the 6th day of September, 1924, at the city of Menasha, Wisconsin, while acting as a motorcycle cop in the employ of said city, and in full for all claims which I now have or may have against said city for damages resulting from being so injured.

"Witness my hand and seal at Menasha, Wis., this 23d day of July, 1926.

"(Signed)    JOSEPH MARTELL.    (Seal.)
"Witness: Jennie L. Heckel."

On the same day the common council of the city of Menasha passed the following resolution, to wit:

"Resolved by the common council of the city of Menasha, that subject to the above receipt the city of Menasha assigns all of its right, title, and interest that it has in and to any claim for injury received by said *Joseph Martell,* who was in the employ of said city when he claims to have been injured on the 6th day of September, 1924; said assignment is made without any recourse hereafter to said city, and it is not to be made a party defendant or otherwise in any action which said *Joseph Martell* may see fit to bring against the party whom he claims injured him as aforesaid.

"Passed and approved this 23d day of July, 1926.

"N. G. REMMEL, Mayor.
"Attest: J. F. DeCaro, City Clerk."

Prior to the execution of the receipt aforesaid, plaintiff requested of the city attorney of Menasha that an action be

begun against the defendants by the city for the recovery of damages from the defendants, or that the cause of action be assigned to the plaintiff.

Upon the execution and delivery of the foregoing documents the plaintiff commenced his action against the defendants and served his complaint, whereupon the defendants interposed a plea in abatement and an answer on the merits. Under and pursuant to the provisions of sec. 270.09 of the Statutes, the court then proceeded to hear the plea in abatement, with the result that such plea was quashed by the court.

Defendants' counsel assigns error to the ruling of the court, contending, first, that the plaintiff has no right under the statute to institute this action; and second, because the plaintiff paid no consideration for the right of action; that the assignment, if there was one, amounts to a gift of public property by a municipal corporation for private uses and without consideration.

Did the plaintiff have a right to commence this action, under the facts and circumstances of this case? When the plaintiff made his lawful claim for compensation against the city under the provisions of sec. 102.29 of the Statutes, such claim so made operated as an assignment of his cause of action in tort to the city. No written assignment was required. The city was then authorized to enforce the tort liability in its own name against the tortfeasors, for its benefit as its interests might appear. Both the employee and the city in such a case are given an interest in the proceeds, in accordance with the provisions of said statute. The city, however, is under no obligation to the employee to prosecute the action. The statute further provides:

"The failure of the employer . . . to pursue his remedy against the third party within ninety days after written demand by a compensation beneficiary, shall entitle such beneficiary . . . to enforce liability in his own name, ac-

counting of the proceeds to be made on the basis above provided."

The portion of the statute thus quoted is clear and unambiguous. When the employee serves his written demand upon the employer, such demand operates to fix the period during which the employer must commence his action if he desires to enforce his rights; and failing to take advantage of the rights accorded him, then by operation of law the right of action in tort passes to the employee, who, however, in the event of a recovery, must account to the employer for part of the proceeds, as is determined by the statute itself.

It is argued by defendants' counsel that the right of action given to the employee is statutory; that this right, being created by the statute, cannot be enforced unless the statute is strictly complied with; that the assignment of the employer to the employee cannot be recognized; and that therefore the plaintiff had no legal right to commence this action. The statute referred to is a component part of the workmen's compensation law, and it has been repeatedly held by this court that the beneficent provisions of this act must be liberally construed in order to effect the purpose of its enactment. *Stephenson v. Schelk,* 173 Wis. 251, 180 N. W. 842. The compensation law was enacted for the benefit of the employer and of the employee, and not for the benefit of third parties who are tortfeasors. Where the employer has, as in the instant case, paid compensation to the employee for an injury to the latter, caused by the tort of a third person, it is but logical that the employer should have the first right to bring the action against the tortfeasor in order that he might be reimbursed for the amount paid by him. It is for this reason that the legislature saw fit to accord to the employer the right to prosecute an action within the statutory period of ninety days. This ninety-day period is accorded in order to afford the employer ample time for investigation

and to determine whether he shall exercise the right which the law has granted to him. But the legislature also has recognized the fact that an employee might sustain damages through the negligent acts of a tortfeasor in a sum exceeding the amount which the industrial commission is authorized to award, and that if an employer fails to proceed with his action within the time allotted by law, the tortfeasor should not be permitted to reap the benefit of such failure if the employee feels that he has a good cause of action and desires to prosecute it. Therefore, automatically, by force of the statute, in order that justice might be done, after the expiration of the period allotted the right of action passes to the employee, who, pursuant to the statute, can prosecute the action in his own name, the employer retaining only an interest in the proceeds. When we bear in mind the purpose for which the statute was enacted and the ends desired to be achieved thereby, the conclusion irresistibly follows that the cause of action may be assigned before the expiration of the ninety-day period, and the action may then be prosecuted in the name of the employee. *McGarvey v. Independent O. & G. Co.* 156 Wis. 580, 146 N. W. 895; *Saudek v. Milwaukee E. R. & L. Co.* 163 Wis. 109, 157 N. W. 579. The assignment operates principally as an express waiver of the employer's rights to bring the action.

Defendants' counsel also contends that there was no assignment in this case; that the purported assignment was merely a resolution. An examination of this so-called resolution clearly imports that while it is termed a resolution it was in fact an assignment.

In the second assignment of error under the plea in abatement it is contended that the assignment is void because it expresses no consideration; that a municipal corporation cannot gratuitously dispose of its property or of a property right; and that a right of action like the one here in question is a property right. An employer, after making an investigation, may arrive at the conclusion that his cause of action

Martell v. Kutcher, 195 Wis. 19.

cannot be successfully maintained or that a recovery may be extremely doubtful. The outcome in a great majority of personal injury cases is highly problematical. The prosecution of such actions ordinarily is connected with considerable expense and the sacrifice of much valuable time. Where the employer prosecutes the action, the loss of time and the expenses thereof devolve upon him and not upon the employee. Where the employee prosecutes it he assumes such possible loss, and not the employer. In the instant case the employer could in no event be held liable for costs, expenses, or loss of time had the result been disastrous, but such burden would have fallen solely upon the employee; and all this follows notwithstanding the fact that the employer has an interest in the proceeds. Under such circumstances it cannot fairly be said that there was a lack of consideration or that the consideration was inadequate. *Saudek v. Milwaukee E. R. & L. Co., supra.*

While it is the law that a municipal corporation cannot without a consideration transfer its property, if it does so, only the corporation or a taxpayer may object. The law is founded upon public policy, exists for the protection of the municipality and its inhabitants, and only those vitally interested in the property of a municipality can be heard upon the subject. As has heretofore been said, the compensation act was passed for the benefit of employers and employees, and not for the benefit of tortfeasors; and it furthermore would appear quite clear that if we assume the assignment in the instant case as having no consideration, upon the successful termination of a suit brought by the employee the municipality would be estopped from claiming the invalidity of the assignment and would be relegated to pursue its rights on the recovery of its interest in the judgment. While the trial court did not in express language base its decision on the view thus expressed, it nevertheless arrived at the same conclusion and made the same manifest by a provision in its order and judgment, pursuant to which the plaintiff must

pay the amount recovered into court, so that the statutory accounting may be had and the proceeds distributed in accordance with the respective interests of the parties.   In the prosecution of this action by the employee the employer might profit, but in no event lose; but on the other hand the employee, while he might also profit, might also lose the value of his time, the expenses of the trial, and the costs of the action.

With the views thus expressed, we conclude that the plea in abatement was properly quashed.

We come now to the appeal from the judgment, which involves the merits of the action.   The plank road on which the accident happened commences at the intersection of Third and Manitowoc streets, and runs in a northeasterly and southwesterly direction in the city of Menasha, and has a concrete pavement thereon sixteen feet in width.   London street runs north and south, is a dirt highway, and terminates on the north edge of the plank road.   About 400 feet northeast from Third street a railroad crosses the plank road, and London street terminates at the plank road a distance of about 800 feet northeast from such crossing. When the defendant *Emma Kutcher* drove onto the plank road at Third street she observed the plaintiff at that point with his motorcycle.   It is the claim of *Emma Kutcher* that she then saw a speeding car pass her in a northeasterly direction on the plank road.   The plaintiff claimed that the car which passed the defendant *Emma Kutcher* was not speeding, but that he considered that the driver of the car was intoxicated; that he concluded to pursue the alleged drunken driver; and that for some distance after he passed the railroad crossing his motorcycle was operated at a speed of about thirty-five miles per hour; that when he arrived at a point about 100 feet southwest of the intersection of London street and the plank road, he overtook the defendant *Emma Kutcher*, who was traveling on the right side of the center line of the road; that the night before the collision with the defendant's auto-

mobile an accident had occurred at the intersection of Lon-
don street and the plank road, and that for that reason he
exercised great precaution at that point in an effort to ascer-
tain whether or not the defendant *Emma Kutcher* would
signal her intention of driving north on London street; that
she gave no signal whatever before attempting to make the
turn; that within a distance of 100 feet before arriving at
the intersection he drove his motorcycle to the left of the
Kutcher automobile a distance of about five feet, and that
both he and *Mrs. Kutcher* operated their machines at the
rate of between twenty and twenty-five miles per hour; that
while traveling the entire distance from Third street to the
intersection of London street he sounded his horn; that he
had no intention of passing the Kutcher automobile until he
had crossed London street; that upon arriving at the inter-
section of the plank road and London street the Kutcher
automobile was suddenly turned to the left, and that no
signal indicating such an intention had been given by *Mrs.
Kutcher;* that in making the turn the automobile ran into
plaintiff's motorcycle; that the motorcycle struck the auto-
mobile near the left rear wheel; that it glanced up along the
running board and the left front fender, demolishing both,
and that the left front wheel of the automobile was sprung
and severely damaged; that as the result of the collision he
was violently thrown into the air and landed a distance of
about twenty-five to thirty feet from where the collision took
place.

The case was submitted to the jury upon a special verdict.
By its answer to the first question thereof the jury found
that the defendant *Emma Kutcher* was negligent (a) with
respect to passing to the right of the center of the inter-
section of the plank road and London street when turning to
the left into London street; (b) with respect to operating the
automobile at a rate of speed greater than was reasonable
while approaching the intersection and turning into London
street; (c) with respect to failure to discover the presence of

the motorcycle near the automobile while the automobile was approaching the intersection and preparing to turn into London street; (d) with respect to giving a suitable warning of her intention to turn to the left into London street.

To question number 2 the jury found that the negligence of the defendant *Emma Kutcher* as aforesaid was a proximate cause of the injury. To question number 3 the jury found that the plaintiff was not guilty of negligence which proximately contributed to the collision. By the answer to the fourth question the jury assessed the damages. Upon this verdict judgment was entered in plaintiff's favor, and the defendants appealed.

The jury having found the defendant *Emma Kutcher* guilty of negligence in the respects shown by the verdict and that such negligence constituted the proximate cause of the collision, and there being ample credible evidence to sustain such verdict, the verdict in that regard cannot be disturbed.

It is the contention of defendants' counsel, however, that the plaintiff was guilty of negligence as a matter of law, and that therefore the answer of the jury to the third question of the special verdict should be changed from "No" to "Yes," and that judgment for the defendants should follow as a matter of course. It is insisted by defendants' counsel that the plaintiff while covering the last one hundred feet of his trip, and while he was driving alongside of the Kutcher automobile, could readily have avoided the collision if he had either speeded up his machine or had decreased the speed thereof. Undoubtedly no collision with the Kutcher car would have resulted had he pursued either course of conduct; but if we give credence to his testimony, he had in mind the accident of the preceding night at this intersection; he carefully kept his eyes upon *Mrs. Kutcher* while traveling the last one hundred feet of his trip, for the express purpose of ascertaining whether she would signal her intention of making the turn into London street. No such signal having been given, he had the right to assume that her intention was to

continue her course on the plank road beyond the intersection. He also claims that he exercised care in not speeding up his machine so as to pass *Mrs. Kutcher,* for the reason that he feared a possible collision with some other machine. He evidently believed that he ought not to decrease the speed of his machine beyond twenty miles an hour, that being the rate of speed that his machine was operated at the time of the collision, because he was in pursuit of the alleged drunken driver. While traveling over the one hundred feet prior to the collision he continued to sound his horn, and, according to the testimony of witnesses, the signal could be heard for a distance of 200 or 300 feet. He therefore had no reason to anticipate a collision, and under the facts and circumstances of the case the question of plaintiff's negligence presented a jury issue. It also appears from the evidence that the lights upon the motorcycle and upon the automobile were all burning. Had the defendant *Emma Kutcher* looked, she could have observed not only the lights of the motorcycle but also the motorcycle itself. Had she listened, she could have heard the horn of the motorcycle.

Under the evidence in this case, therefore, considering the plaintiff's testimony as credible, there was ample evidence to support the verdict of the jury by which it found that the plaintiff was free from contributory negligence.

But it is further argued that the physical situation existing at the time of the collision was such as to discredit plaintiff's testimony. Defendants' counsel relies particularly upon the damage done to the Kutcher automobile; also upon the force with which the plaintiff was thrown into the air, and the point where the plaintiff finally landed, being at least twenty-five feet from the place of the collision. We have carefully considered the argument of defendants' counsel upon this point, and we agree with him that these facts are indicative of a high degree of speed on plaintiff's part. However, the jury and the court were in a better position to pass judgment upon this testimony than are the members of

this court, who must rely solely upon the cold record. Besides, it may be said that the average juror nowadays is as able to pass judgment upon the facts involved in an automobile collision as is any member of this court. Both the judge and the jury had the advantage of hearing the witnesses testify; they could observe their appearance upon the stand and the manner in which they gave their testimony, and therefore had an advantage over this court in determining the credibility of the witnesses. While it is the opinion of the court that as an original proposition, from the record, the members of the court would have come to a different conclusion upon the alleged negligence of the plaintiff, nevertheless we are constrained to hold that the question of the plaintiff's negligence properly came within the province of the jury to decide, and, there being credible evidence to support the verdict, the same should be permitted to stand.

Defendants' counsel after verdict also moved for a new trial because of alleged errors committed in the *voir dire* examination. Upon this examination two general questions were put to the jury as a whole. The first consisted of an inquiry whether any member of the jury did business with Northrup & Friedland, insurance agents at Menasha. The second question inquired whether any member of the jury was in any way interested with the Northrup Indemnity Company of New York, or whether they did business with such company. There was no allusion whatever made to any fact that the automobile of the defendant *Kutcher* was insured by the company or through the agents. The questions were proper, and it would appear to us that in the discharge of the obligations which plaintiff's counsel owed to their client such inquiry was not only proper but necessary. *Faber v. C. Reiss Coal Co.* 124 Wis. 554, 102 N. W. 1049; *Lozon v. Leamon B. Co.* 186 Wis. 84, 202 N. W. 296.

In order to prove certain admissions made by the plaintiff as to the speed of his motorcycle prior to the collision, two witnesses were placed upon the stand by defendants, one

Friedland and one Henkel. On cross-examination these witnesses were expressly interrogated upon the subject of whether or not they were interested in the insurance company that had insured the risk, or whether they were acting as agents for such company. The inquiry was a material one, and went directly to the credibility of these witnesses upon the subject of their interest. There is no reason that we can perceive why such an inquiry was not proper, as long as it was made in good faith, and the answers to these questions clearly disclose a direct or indirect interest. In any event, their answers disclose a close relationship as agents for the company. When the defendants placed these witnesses upon the stand they did so at the risk that proper inquiry would be made as to their relationship with the insurance company or their interest in the company as agents.

As a further ground on the motion for a new trial, defendants' counsel claims that prejudicial error was committed by plaintiff's counsel in his closing argument by stating that out of any award made by the jury the plaintiff would be compelled to repay the city of Menasha or its insurer the amount of the compensation paid by the city. This contention is properly disposed of in the opinion of the trial court, which we quote with approval:

"As to the subject of the compensation received by the plaintiff from his employer, the city of Menasha, by way of an award on account of his injuries, the defendants' counsel himself . . . introduced it in evidence, though it was at that time received on the record without being communicated to the jury. Defendants' counsel thereafter, in his argument to the jury, stated the fact that the plaintiff had received compensation from the city of Menasha on account of the injuries, though perhaps without stating the amount. To this statement plaintiff's counsel objected, as appears by the record, and the court sustained the objection and directed the jury to disregard it. Whatever plaintiff's counsel stated to the jury in his closing argument in reference to such compensation was, in my judgment, properly stated, in view of the previous statement of the defendants' counsel; whatever

the statement of the plaintiff's counsel was in that regard, it was not made a part of the record at the time, and no exception or objection in proper form made thereto. It cannot, therefore, now be used to affect the verdict. However, as I recall it, there was nothing in it which was improper in view of defendants' counsel's previous statement, even though it may have included a reference to the amount of the award. The argument of the defendants' counsel to the jury on that subject may have left the impression that the plaintiff had already been partly paid for his injuries and that on that account I consider that it was proper to state to the jury that the law made it the duty of the court to adjust the rights of the employer, . . . and that the jury had nothing to do with that question, but that they were simply to determine the facts in the case as presented by the special verdict and to determine the total sum which would be reasonably required to compensate the plaintiff for his injuries."

On the oral argument the attention of the court was called by defendants' counsel to a misstatement of the evidence, appearing on page 10 of plaintiff's brief. Said statement is emphasized in bold and enlarged type, and is to the effect that *Mrs. Kutcher,* prior to making the turn into London street, saw the plaintiff. Counsel for the plaintiff who argued the case justified this misstatement by asserting that it was mere argument, and not a recital of the evidence. The record does not warrant the statement. Being printed in the form in which it appears, manifested an intention to mislead the court. Such statement so made is not an aid to the administration of justice, but tends to defeat it. It is therefore considered that no costs will be allowed for respondent's brief.

We find no prejudicial error in this case, and the judgment must therefore be affirmed.

*By the Court.*—The judgment of the lower court is affirmed, and the cause is remanded with directions for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on February 7, 1928.