[No. 20927.   Department Two.   April 24, 1928.]

PAUL CROCK, *by his Guardian ad litem S. J. Crock,*
*Respondent,* v. MAGNOLIA MILLING COMPANY,
*Appellant.*[1]

[1] MUNICIPAL CORPORATIONS (379)—USE OF STREETS—PEDESTRIAN—
NEGLIGENCE—QUESTION FOR JURY. The negligence of the de-
fendant, and contributory negligence of the plaintiff, are ques-
tions for the jury where, in action for injuries to a newsboy
crossing between street intersections, and struck by a truck,
the principal witnesses for plaintiff gave a version of the acci-
dent from which it would appear that the truck, to avoid the
accident, turned to the left of the center of the street, when
the accident would have been avoided if it had held its course
on the right hand side of the street.

[2] MUNICIPAL CORPORATIONS (384)—INJURY TO PEDESTRIAN — LAST
CLEAR CHANCE. In an action for injuries to a newsboy, crossing
the street between intersections, and struck by a truck, the
doctrine of last clear chance is not applicable, where the boy
was either not in peril until a change in the course of the truck
made the accident inevitable, or upon another theory, the boy
alone had the last clear chance of avoiding the accident by
changing his course.

[3] EVIDENCE (99, 128) — DOCUMENTARY EVIDENCE — SELF-SERVING
DECLARATIONS—PRIVATE STATEMENTS — RIGHT TO WHOLE DOCU-
MENT. In an action for injuries sustained when a boy was
struck by an auto truck, the plaintiff having introduced part
of the report made by the truck driver to the police depart-
ment, the defendant is entitled to offer the whole of the report,
and it is not inadmissible as a self-serving declaration.

[4] EVIDENCE (53)—RES GESTAE—STATEMENTS AFTER EVENT. In an
action for injuries to a boy struck by an auto truck, evidence
that an employee of the defendant, arriving at the scene, stated
that "we will have to stop this coasting down hill," is inad-
missible where there was no evidence of any coasting down
hill, or anything to make it part of the res gestae or part of a
conversation otherwise admissible.

[5] DAMAGES (47)—INJURIES TO PERSON—FUTURE DAMAGES AND SUF-
FERING—REASONABLE PROBABILITY. In an action for injuries to
the skull, it is error to allow an expert to state that there was

[1]Reported in 266 Pac. 727.

a "probability" of epilepsy following fractures of the skull, without showing a reasonable certainty from the particular injury that such result would follow.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered June 28, 1927, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries. Reversed.

*Howe & Graham* and *James B. Howe, Jr.,* for appellant.

*Farrell, Meier & Meagher,* for respondent.

FULLERTON, C. J.—In this action, the respondent, Crock, suing by guardian *ad litem,* recovered against the appellant, Magnolia Milling Company, in the sum of $5,000 for personal injuries.

The appellant, in the pursuit of its business, operates motor trucks over the public streets of the city of Seattle. On January 7, 1927, at about 4:30 o'clock in the evening, while one of its trucks was being driven along one of such streets, it collided with the respondent, knocking him down and severely injuring him. Cross streets, some two hundred feet apart, intersect at right angles the street over which the truck was driven, and the collision occurred about midway between two of such streets. The street was paved on one side only, for a width of eighteen feet.

The evidence is conflicting as to the events which preceded and caused the accident, but, taking as true that version of the facts most favorable to the respondent, they are in substance these: The respondent was some eleven years and eight months of age. He had a newspaper route, and, preceding the accident, was engaged in delivering newspapers over the route, riding on roller skates. He had delivered a paper at a house on the west side of the street, near the southerly

of the cross streets between which the accident happened, and proceeded from thence northerly on a sidewalk constructed on the same side of the street. As he reached a point opposite the place of the accident, he left the sidewalk and went over towards the paved portion of the street to talk to a boy who was standing near the highway. The truck of the appellant was then approaching from the north, traveling, on what was to the driver of the truck the right hand side of the paved way, at a speed estimated as being between fifteen and twenty miles per hour.

As the truck approached, the respondent started to cross the paved way, walking on his skates. The driver of the truck, after the respondent started to cross the street, continued on his course on the right hand side of the paved way without slackening his speed until he was about twenty feet from the respondent, when, to quote from the testimony of the boy mentioned who furnished the version of the facts on which the respondent relies, "he swung out towards the street car in the direction which Paul [respondent] was going, to try to turn short of Paul—to cut short of the boy;" that he at the same time applied the truck's brakes, causing its rear wheels to slide, but did not succeed in stopping the truck before striking the respondent; that the respondent was struck, as he neared the east side of the paved way, with the right side of the truck's front fender. The witness further testified that the respondent was well beyond the center of the paved way when the truck was turned to the left, and that, had it continued directly on its course it would not have struck him.

There were some discrepancies in the testimony of the witness, the most serious of which was, perhaps, his testimony as to the distance the truck was from the respondent at the time he started to cross the

paved way, but these were only estimates, and in the main his testimony was clear and explicit.

There was another version of the accident, supported by a witness whom the appellant called and by the driver of the truck. Their testimony was to the effect that respondent, after delivering a paper at the house mentioned, skated up the paved way on its right hand side until he neared the boy with whom he desired to talk and then turned diagonally across the way to him; that the truck was then approaching on the side of the way on which the respondent stood, and as it neared him, the driver turned towards the middle of the way to give a greater clearance between the truck and the respondent; that at that time the respondent started across the way in front of the truck, and that the driver, to avoid striking him, turned the truck sharply to the left and applied its brakes. It was the evidence of these witnesses that the respondent did not travel directly across the way, but diagonally in the direction the truck was approaching, and that he continued his course until the truck struck him, although the sequel proved that he could have avoided injury by stopping at any point short of the place he was struck, or by changing his course to his right but a few feet.

[1] The appellant, at proper times during the course of the trial, interposed challenges to the sufficiency of the evidence to sustain a judgment against it, and it presses the question in this court. It does not contend, if we have correctly gathered its argument, that, had the accident occurred as related by the respondent's principal witness, there was not sufficient evidence to warrant a finding of negligence on its part and a want of contributory negligence on the part of the respondent, but contends rather that the account of the transaction given by the witness is in itself so

highly improbable as to be unbelievable, especially when considered with the contradictions in his statements. But the witness did not describe an impossible situation. The accident could have happened in the manner he stated it happened, and we cannot regard the discrepancies in his testimony as materially affecting its weight. The witness, it is true, exhibited a precocity not usual in one of his years, but we have examined the record with care and find nothing to indicate that his narrative was not his own. The question of the truth or falsity of his statement was, therefore, one for the trier of the facts, in this instance the jury, not one of law for the court.

[2] The court gave to the jury an instruction on the doctrine of last clear chance. This, we are forced to conclude, was error prejudicial to the appellant. On either theory of the evidence, we cannot conceive that there was room for the application of this doctrine. If the accident happened in the manner related by the appellant's chief witness, the respondent was not in a perilous situation until the driver of the appellant's truck turned to pass in the respondent's front, and from thence on there was no chance to avoid the accident. It can be argued, of course, that had the driver of the truck been awake to the situation, and observed the movements of the respondent, prior to the time he reached the place where he began the turn, he could have avoided the accident by slackening his speed or by turning in another direction, but failures in these regards involve only the doctrine of ordinary negligence, not the doctrine of last clear chance. If we take the other view of the transaction, the same result follows. In that view of the evidence, it would be difficult to say that there was negligence at all on the part of the driver of the truck. Confronted as he

was by the perilous situation in which the respondent had placed himself, seemingly he took the only possible course to avoid an accident. Moreover, in that view of the evidence, the chance to avoid the accident was with the respondent himself. After he reached a position of peril, he could have extricated himself by stopping, or by changing his course but slightly to another direction. He was not in that inextricable situation necessary to the application of the doctrine of last clear chance.

[3] The driver of the truck, shortly after the accident, made the following report to the police department of the city:

"I was driving a 2½-ton Mack truck belonging to Magnolia Milling Company, West 47th and 14th Avenue northwest, at about 15 to 20 miles per hour. No speedometer on this truck. Brakes good condition. Street dry. In the middle of the block a boy on roller skates was going north on the proper side of the street and just as I was 70 or 80 feet from him a boy on my side of the street called to him. He turned and came back diagonally over on my side of the street.

"I blew my horn when I saw him swing over. It attracted his attention and he turned to go back to the side of the street he had come from, after I had turned out to pass behind him. By that time I was slowed down to about 5 m. p. h. He could not stop and kept on coming. The right end of my front bumper hit him and knocked him down. I steered clear of him and the wheels did not touch him. When I stopped, he was lying alongside my right front wheel, about four feet away from it. I picked him up; he was unconscious. Another car came along and took me and the boy to a doctor whose name I do not know, but whose office is near 20th and Market. The boy came to when I was putting him in the car. The doctor said his left leg just below the hip was broken. Blood was coming from one ear. An ambulance took him to some hospital. I did not get his name.

"I did not get the names of any witness. There were some boys there at the time of the accident.

"I have read the above report, and same is correct.

                              "Walt Burr."

The respondent, when cross-examining the driver of the truck, read to him the first paragraph of the report, and obtained from him the admission that he had made such a report to the police department shortly following the accident. The appellant thereupon questioned the witness concerning the remainder of the report, and objections thereto were sustained. The appellant then offered the entire report, and an objection was sustained to its admission on the ground that it was self-serving. It is our opinion that the court erred in excluding the report. Where one side offers a part of a written document, it is the almost universal rule that the other side is entitled to the remainder. The only permissible exceptions are those in which the part objected to is without connection with the part admitted, or tends in no manner to modify or explain it. Here, one of the purposes the respondent had in introducing the report was to contradict the evidence of the driver given at the trial as to the speed he was traveling immediately prior to the accident, and manifestly, the appellant was entitled to all that he said in the report on that question.

[4] Another employee of the appellant, engaged in driving one of its trucks, appeared at the place of the accident shortly after it occurred. The court allowed, over objection, a witness to testify that this person stated, while talking concerning the accident, "We will have to stop this coasting down hill." This, we think error. The statement in no way tended to characterize the particular act causing the injury; there is no evidence that the driver of the truck was coasting at the particular time, nor evidence that coasting had any-

thing to do with the accident. Nor was it a part of the *res gestae,* or part of a conversation otherwise admissible; it stood out as a naked declaration of a person in no way authorized to speak for the appellant. Had the respondent offered testimony tending to show that the appellant's truck drivers were generally negligent in this particular manner, without showing that this form of negligence entered into the particular accident, we think no one could successfully contend for its admissibility, and plainly it is not more so when presented in this subtle form. That such evidence is always highly prejudicial, no court or practitioner needs be informed.

[5] In the examination of a medical expert, called by the respondent, the following appears:

"Q. Is there a probability, in cases of this kind, that in later years a person so affected might have epilepsy? Mr. Graham: I object as incompetent, irrelevant and immaterial, too remote, and entirely speculative, no foundation for it. Mr. Meagher: I have confined it right to the boy's injury. The Court: Objection overruled. Exception allowed. A. There is a probability. Q. Of what? A. Of epilepsy developing in any person having had a skull fracture."

Further on, the witness stated that his answers were based on his general knowledge concerning the results of fractures of the skull, rather than upon any particular manifestations of the respondent's case. While error is assigned on the admission of the testimony, we think it objectionable rather because of its form than because of its subject matter. As bearing on the question of damages, it was competent for the respondent to show generally that epilepsy sometimes followed injuries to the skull, and to show the relative number of instances in which it did follow when compared with a given number. And it was also competent

to further show, if he could, that it was reasonably certain from his particular injury that such a result will follow as to him. But to show a mere probability of such a result is too indefinite to be of value as evidence, and is liable to be misunderstood by the jury.

The other assignments of error require no special consideration. Because of the errors noticed, the judgment is reversed, and the cause is remanded for a new trial.

ASKREN, MAIN, and HOLCOMB, JJ., concur.