(No. 5182. November 1, 1929.)

ROBERT FARIS, a Minor, by H. J. FARIS, His Guardian *ad Litem,* Respondent, v. BURROUGHS ADDING MACHINE COMPANY, a Corporation, and GEORGE E. TONKIN, Jr., Appellants.

[282 Pac. 72.]

Karl Paine, for Appellants.

Scatterday & Stone, Frawley & Koelsch and L. W. Tennyson, for Respondent.

GIVENS, J.—Respondent in company with a young man named Lamb was driving in a Ford car south on a north and south road which intersected an east and west road on which latter road appellant Tonkin was driving west in a Dodge automobile. Along the side of both highways were high grasses and weeds which obstructed the view and prevented both drivers from seeing the other prior to their entry into the intersection. Both approached the intersection at the same time resulting in a collision in the northwest quadrant of the intersection.

The Ford car was turned over twice and came to rest upside down in the north and south highway on the right-

hand side of the road going south, and south of the intersection. The Dodge remained upright, the front end being pushed laterally about 14 inches to the south; it continued 75 or 100 feet beyond the intersection and was brought to a safe stop.

Respondent was pinned beneath the Ford car from which he was taken almost immediately by parties who came upon the scene shortly after the accident. His injuries are detailed hereafter.

His companion Lamb was assisted from the car by appellant Tonkin who, after stopping his car, returned to the scene of the accident.

There was a dispute as to the speed at which each car was traveling, the speed of respondent's car being estimated at from 12 to 30 miles per hour; the speed of appellant Tonkin's car at from 25 or 30 to 45 miles an hour.

The Ford was more or less demolished. The front axle of the Dodge was bent downward, the hub cap driven against the axle until the end caused a dent in the cap. The right running-board and the fender of the Dodge were crushed in.

Appellant Tonkin was an agent in the employ of the Burroughs Adding Machine Company, and, it is admitted, at the time of the accident was engaged in his employer's business.

Respondent sued appellants for $50,000 damages for personal injuries and $150 damages to his car, on the ground that appellant Tonkin was driving at a great, dangerous and reckless rate of speed and had negligently failed to look out for or give the right of way to respondent, had failed to slow down, sound his horn or give notice or other warning of his approach, alleging that if appellant Tonkin had used reasonable care, he could have seen the Ford in time to avoid the collision.

Appellants admitted the accident, denied responsibility and urged that respondent was guilty of contributory negligence.

The jury returned a verdict in favor of the respondent for $25,100.

Respondent was so severely injured that he did not recall the accident nor any of its details. The only two eye-witnesses were respondent's companion Lamb and the appellant Tonkin.

Appellants urge as reversible error the following: that during the examination of the veniremen, respondent's counsel inquired as to whether prospective Juror Tate was in any way connected with the American Automobile Insurance Company, whereupon the following took place:

"A. We are general agents for the American Automobile Insurance Company but evidently this is some claim before we got the general agency; we have just been agents.

"Q. A company organized under the laws of Missouri?

"Mr. Davis: We object to this line of questioning as prejudicial.

"The Court: It doesn't appear that any insurance company is interested; the objection is sustained.

"Mr. Frawley: I will make the offer; we are advised that there is an insurance company connected or interested in the suit.

"Mr. Davis: We object to counsel's statement as not within the issues and highly prejudicial, and made for the purpose of prejudicing this case; and we ask for a mistrial.

"Mr. Frawley: If your Honor will read the decisions, there are a number of decisions of our court, your Honor will find that we have not infringed on our rights. We can furnish your Honor with these decisions.

"The Court: I would like to have them and if you will postpone this inquiry until later, this particular inquiry, and will give me these citations, I would like to examine them. The defendant's request for a mistrial is denied.

"Mr. Davis: Exception.

"A. I believe the company, The American Insurance Company we are agents for is a New York company.

"Q. Would the fact that you are interested in a company—

"The Court: I asked you to postpone this until later.

"Mr. Frawley: I wasn't going into that matter.

"The Court: As to that matter generally, I wish you would postpone that and examine as to other matters, and if you will give me the authorities.

"Mr. Frawley: Very well."

As we understand counsel for appellants, they concede the right and the propriety of the respondent's attorney to question the veniremen with respect to their connections with the insurance company but claim that the statement by counsel as follows: "I will make the offer—we are advised that there is an insurance company connected or interested in the suit," was prejudicial as calling the attention of the jury to the fact that an insurance company was interested in the suit and that appellants would be protected by the insurance company against loss because of the accidents and injuries which respondent suffered.

The following cases cited by appellants in support of their proposition dealt with the eliciting by plaintiff of testimony during the course of the trial, or argument to the jury designed to establish the fact that defendant carried insurance: *Pekin Stave Co. v. Ramey*, 104 Ark. 1, 147 S. W. 83; *Perez v. Wilson*, 86 Cal. App. 288, 260 Pac. 838; *Citti v. Bava*, 204 Cal. 136, 266 Pac. 954; *Simpson v. Foundation Co.*, 201 N. Y. 479, Ann. Cas. 1912B, 321, 95 N. E. 10; *Yoast v. Sims*, 122 Okl. 200, 253 Pac. 504; *Rosumny. v. Marks*, 118 Or. 248, 246 Pac. 723; *City of Austin v. Gress*, (Tex. Civ. App.) 156 S. W. 535; *Carter v. Walker*, (Tex. Civ. App.) 165 S. W. 483; *Rinehart & Dennis v. Brown*, 137 Va. 670, 120 S. E. 269; *McSweyn v. Everett*, 136 Wash. 202, 239 Pac. 205; *Wilkins v. Schwartz*, 101 W. Va. 337, 132 S. E. 887; *Fleming v. Hartrick*, 105 W. Va. 135, 141 S. E. 628.

That there is a distinction between remarks made during the trial and bringing out during the testimony that defendant is protected by insurance and questioning the veniremen on the *voir dire* is apparent from a consideration of the cases which have passed on this subject.

The general rule is as stated in *Arnold v. California Portland Cement Co.*, 41 Cal. App. 420, 183 Pac. 171:

"It is entirely proper for counsel to ask the jurors such questions as may reasonably be necessary to ascertain whether they are free from a bias or interest that may affect their verdict. To this end, it is proper for counsel, in good faith, to ask of each juror whether he is interested as an agent or stockholder or otherwise in a specified casualty company. Or he may be asked the broad question whether he is interested in any insurance company insuring against liability for negligence. *Rinklin v. Acker*, 125 App. Div. 244, 109 N. Y. Supp. 125; *Grant v. National etc. Co.*, 100 App. Div. 234, 91 N. Y. Supp. 805. But counsel must take pains to propound such questions in such a manner as not necessarily to convey the impression that the defendant is in fact so insured."

See, also, *Bass Furniture Co. v. Electric Supply Co.*, 101 Okl. 293, 225 Pac. 519; *Lozon v. Leamon Bakery Co.*, 186 Wis. 84, 202 N. W. 296.

Apparently the weight of authority, at least by number, is to the effect that such questions may be asked but not in such a way as to emphasize to the jury that the defendant is in fact insured against liability because of the accident. (*Reed Gold Mines Co. v. Morrison*, 26 Ariz. 281, 224 Pac. 822; *Pekin Stave Co. v. Ramey*, 101 Ark. 1, 147 S. W. 83; *Cooper v. Kelly*, 131 Ark. 6, 198 S. W. 94; *Williamson v. Hardy*, 47 Cal. App. 377, 190 Pac. 646; *Evansville Gas Co. v. Robertson*, 55 Ind. App. 353, 100 N. E. 689; *Bryant v. Welch Furniture Co.*, 186 N. C. 441, 119 S. E. 823; *Spinney's Admx. v. Hooker*, 92 Vt. 146, 102 Atl. 53; *Chybowski v. Bucyrus Co.*, 127 Wis. 332, 106 N. W. 833, 7 L. R. A., N. S., 357; *Stewart v. Brune*, 179 Fed. 350.)

Other courts have held that unless defendant fails to show that such indemnity does not exist, such questions are proper. (*New Aetna Cement Co. v. Hatt*, 231 Fed. 611, 13 Neg. & Comp. Cas. 334, and note; *Granrus v. Croxton Mining Co.*, 102 Minn. 325, 113 N. W. 693; *Uggen v. Bazille &*

*Partridge,* 127 Minn. 364, 149 N. W. 459; *Featherstone v. Lowell Cotton Mills,* 159 N. C. 429, 74 S. E. 918.)

Some courts have indicated that it is to be left to the discretion of the trial court in determining counsel's good faith and how far counsel may be permitted to show that defendant is protected by insurance or that he made an inquiry without such showing. (*Walters v. Durham Lumber Co.,* 165 N. C. 388, 81 S. E. 453.)

From these authorities it is clear that a majority of the courts hold that the questioning must be in good faith and that the good faith must appear from the manner of the questioning and the attitude of counsel.

There are authorities which hold that stating directly to the jury that an insurance company is interested is prejudicial error which could not be removed by an instruction to the jury to disregard such statements. (*Wilkins v. Schwartz,* 101 W. Va. 337, 132 S. E. 887.) This case relies on *Adams v. Cline Ice Cream Co.,* 101 W. Va. 35, 131 S. E. 867, which in turn cites the following cases:

*Pierce v. United Gas & Electric Co.,* 161 Cal. 176, 118 Pac. 700: It does not clearly appear in this case whether the information came out during the evidence or examination of the veniremen but evidently it was the latter.

*Swift & Co. v. Platte,* 86 Kan. 1, 72 Pac. 271, 74 Pac. 635: It will be noted that the examination in this case was quite different in scope and much greater in length than in the case at bar and therefore can be distinguished on the facts from the case herein.

*Mithen v. Jeffery,* 259 Ill. 372, 102 N. E. 778: In this case, the court held that it was erroneous to inquire if the prospective jurymen knew of a certain insurance company. That would be quite different from attempting to find out if the prospective jurymen were interested in a particular company, and furthermore held that it would not have been prejudicial if it had been the only error in the case. The case was reversed on other grounds.

*Pekin Stave Co. v. Ramey,* 104 Ark. 1, 147 S. W. 83: The Court here held it was improper to ask if the defendant was insured but proper to show a venireman's interest.

*Cosselmon v. Dunfee,* 172 N. Y. 507, 65 N. E. 494: In this case the objectionable questions were propounded to a witness—not to a juryman on the *voir dire.*

*Hollis v. United States Glass Co.,* 220 Pa. 49, 69 Atl. 55: The objectionable statements in this case were made during the argument of counsel to the jury.

*Girard v. Grosvenordale Co.,* 82 Conn. 271, 73 Atl. 747: Questions similar to those involved herein were allowed after permission had been secured in the absence of the jury.

*Chybowski v. Bucyrus Co.,* 127 Wis. 332, 106 N. W. 833, 7 L. R. A., N. S., 357: The court held that the veniremen might be questioned but counsel should not imply that defendant carried any insurance.

It will be noted from the quoted portion of the record that the statement of counsel was with reference to the court's ruling if indeed it was not in response to this ruling.

Some courts hold that before such questions are proper, it must be shown that defendant did in fact have insurance. From the transcript we do not think that counsel was necessarily acting in bad faith. The trial court indicated that its conclusions were otherwise. Counsel did not further pursue the inquiry.

Later, under permission of the court, this question was asked of all the veniremen:

"Mr. Frawley: Are either of you, Gentlemen of the Jury, pecuniarily interested in any company or concern in which you may be connected, that would have, or could have any interest in the result of this suit?

"The Jurors: No.

"The Court: You may ask whether they are connected in any way.

"Mr. Frawley: Are you in any manner connected with any such company?

"The Jurors: No.

"The Court: In this connection, I will at this time admonish you to disregard entirely any statements of counsel that have heretofore been made, as to whether or not the defendants or either of them carried any liability insurance,

that matter not being in issue in this case, and not being for you to consider one way or the other, or to speculate upon, in the course of the proceedings.''

This court has heretofore indicated that in damage cases it is not error to permit counsel to ask jurors whether they have any connection or relation with surety or casualty companies. (*Wilson v. St. Joe Boom Co.*, 34 Ida. 253, 200 Pac. 884; *Cochran v. Gritman*, 34 Ida. 654, 203 Pac. 289; *Bressan v. Herrick*, 35 Ida. 217, 205 Pac. 555.)

In the last case cited, counsel immediately after the asking of questions similar to those herein moved for a mistrial and it was denied.

See, also, *O'Neill v. Thomas Day Co.*, 152 Cal. 357, 14 Ann. Cas. 970, 92 Pac. 856. In *Lidfors v. Pflaum*, 115 Or. 142, 236 Pac. 1059, a similar point was made, the situation being set forth in the opinion as follows:

'' . . . . we are of the opinion it is the privilege of a party, within reasonable limits and good faith, to ascertain the occupation of a juror and the extent of his possible interest in the trial and the questions here went no further than this. Page, in answer to a question not objected to, stated that he was agent for several casualty insurance companies. It was natural and proper for plaintiff's counsel to ascertain whether any one of these several companies had issued an indemnity policy to defendant. Nobody can reasonably contend that, if such were the case, the resident agent of such company would be a competent juror. Counsel for plaintiff would have been negligent of his client's interest had he failed to inquire as to this fact. The question was justifiable under the particular circumstances disclosed here.''  .

In the following cases the court held that the inquiry did not overstep the bounds: *Williamson v. Hardy*, 47 Cal. App. 377, 190 Pac. 646; *Cozard v. Raisch Improvement Co.*, 175 Cal. 619, 166 Pac. 1000; *Armstrong v. Yakima Hotel Co.*, 75 Wash. 477, 135 Pac. 233.

The question is treated of and cases are collected in an exhaustive note to *Enger v. Curtis etc. Co.*, (Neb.) L. R. A. 1915A, 153.

With reference to *Purcell v. Degenhardt*, 202 Ill. App. 611, the court therein commented on the fact that there was no apparent reason for making the inquiry of the particular venireman inquired of. If such be a pertinent observation, herein the particular juryman was in fact an agent of an insurance company, and while it does not appear this company was interested, such was not denied by appellants, and though not implying that appellants should have made such denial, it does appear as a basis for counsel's good faith, namely, that the venireman was connected with an insurance company and was excused because of prejudice against the kind of a case being tried. (*Netter v. Caldwell*, 173 Ky. 200, 190 S. W. 721.)

Missouri has indicated that the proper method is first to inquire of counsel for the defendant out of the presence of the jury if the defendant carries insurance. If the answer is in the affirmative, then counsel may inquire of the veniremen. If defendant's counsel refuses this information, counsel may inquire. If defendant does not carry insurance, then no inquiry may be made. (*Hill v. Jackson*, (Mo. App.) 272 S. W. 105; *Chambers v. Kennedy*, (Mo.) 274 S. W. 726.)

It furthermore appears that during the examination of one of the witnesses who arrived at the scene of the accident shortly after the unfortunate occurrence, he stated that appellant Tonkin had said that he or his employer carried insurance or something to that effect. No objection was made to this portion of his answer nor did counsel ask that it be stricken. It would appear that if it were error for counsel to inadvertently state in the presence of the veniremen that an insurance company was interested in the case, such a remark was rendered harmless by this evidence.

Under the circumstances of this case, without approving the practice of counsel advising the jury that there may be an insurance company in the case, we do not believe that the statements complained of were prejudicial. (*Lidflors v. Pflaum*, 115 Or. 142, 236 Pac. 1059; 35 C. J. 394.)

■ Appellant complains that veniremen were discharged by the trial court without sufficient cause on challenges interposed for cause. Such was not error. The examination showed reasonable ground for disqualification. This court has held that no party is entitled to any particular juryman unless it is affirmatively shown that other jurors which the litigant was compelled to accept were prejudiced. (*State v. Clark*, 47 Ida. 750, 278 Pac. 776; *State v. Hoagland*, 39 Ida. 405, 228 Pac. 314.)

The testimony of McConnell, a civil engineer in the county where the accident occurred, was sufficient to show that the roads were public highways.

■ Counsel objects because certain mechanics employed in the Dodge garage in Boise were not permitted to testify from their examination of the Dodge car and by reason of their knowledge of the effect on Dodges of collisions, as to the approximate rate of speed the two cars were going when the accident occurred. These objections were properly sustained. (*Cook v. Stimson Mill Co.*, 41 Wash. 314, 83 Pac. 419; *Neesley v. Southern Pac. Co.*, 35 Utah, 259, 99 Pac. 1067.)

Counsel complains that no distinction was made in the instruction given by the court between negligence because of the violation of a statute and negligence in fact. Instructions number 12 and 13, covering this phase of the matter, contained the essential requirement that such negligence of either kind must be the contributing cause of the accident. (*Kerby v. Oregon Short Line*, 45 Ida. 636, 264 Pac. 377.)

■ Appellants urge that the instructions submitting to the jury the question of the so-called last clear chance doctrine were erroneous because appellant did not, after knowledge of respondent's peril, have time to avoid the accident. The cases cited by appellant indicate that such is the rule. (*Crock v. Magnolia Milling Co.*, 147 Wash. 589, 266 Pac. 727; *Garrison v. Pearlstein*, 68 Cal. App. 326, 229 Pac. 348.) In those cases, however, the facts are distinguishable because there it was clearly apparent that the appellant did not have a last clear chance. Herein appellant testified that he did

not swerve, put on his brakes, or do anything either on entering the intersection or after seeing respondent's car. Whether he should or could have turned or applied his brakes and whether the same could have been done in time to have avoided the accident or lessened its consequences were questions for the jury. (*Pilmer v. Boise Traction Co.*, 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Martell v. Kutcher*, 195 Wis. 19, 216 N. W. 522; 45 C. J. 984.) "The instruction on the last clear chance was in accord with that in *Short v. Boise Valley Traction Co. et al.*, 38 Ida. 593, 225 Pac. 398, and as said therein the case here was peculiarly fitted to be submitted to a jury." (See, also, *Hooker v. Schuler*, 45 Ida. 83, 260 Pac. 1027, and *Bryant v. Hill*, 45 Ida. 662, 264 Pac. 869.)

While it was probably improper or at least unnecessary for the court to instruct on the rate of speed allowed at intersections in cities, such instruction being based on 1921 S. L. 541, sec. 1, subd. 16, and 1925 S. L. 322, sec. 6, the same was not prejudicial because the court clearly differentiated between the rate of speed in the city, and the country and we do not believe that the jury was misled.

Counsel complains of Instruction No. 14, which dealt with relative rights of motor vehicles at intersections because the following sentence was left out of the instruction:

"When two automobiles are approaching a highway intersection at right angles, the first one upon the intersection has the right of way, and it is the duty of the driver of the other to stop or slacken its speed to avoid a collision."

The instruction as given was as follows:

"The jury is instructed that the term 'right of way' as used in the law means the privilege of the immediate use of the intersection. The privilege is not exclusive but relative, the right to exercise it depending upon the circumstances in each particular case. The right of way granted by law to vehicles on the right at highway intersections has no proper application except where the vehicles on intersecting highways approach the intersection so nearly at the

same time and at such rates of speed that, if both proceed, each without regard to the other, a collision between them is reasonably to be apprehended. In such a case, it is the right of the one having the right of precedence to continue his course, and it is the duty of the other to yield him the right of way.''

The instruction stated the essential part of the sentence which was eliminated, there being properly left to the jury the question of which car or the driver thereof should have the right to proceed, it being a question of fact and not of law as to the one having the right to proceed. (*Pederson v. O'Rourke*, 54 N. D. 428, 209 N. W. 798; *Gilman v. Olsen*, 125 Or. 1, 265 Pac. 439; *contra, Fox v. McCormick*, 110 Kan. 91, 202 Pac. 614; *Golden Eagle Dry Goods Co. v. Mockbee*, 68 Colo. 312, 189 Pac. 850.)

■ Appellant urges that the undisputed physical facts of the accident, the condition of the cars and the testimony of the witnesses show that appellant Tonkin could not have been responsible for the accident or negligent in connection therewith; also that there was a fatal variance in that the complaint alleged that the Dodge automobile was driven head-on into and against the Ford, whereas the evidence showed that the Ford hit the Dodge. We think the jury was justified in concluding that what actually took place was that the two cars hit each other—the left-hand front of the Ford collided with the right-hand front of the Dodge. By the impact, the Ford was thrown against the Dodge whirling it backward so that the rear of the Ford swung around and at the same time in line with the Ford's previous course of travel, the Dodge being pushed laterally to the left. The Dodge evidently, by reason of its greater weight or possibly greater speed, continued on its course upright.

Concluding that the cars thus struck is not such a fatal variance as to vitiate the verdict or indicate that the physical facts conclusively show that appellant Tonkin in the Dodge was not negligently responsible for the injury to the Ford car and respondent. (*Martell v. Kutcher, supra.*)

Appellants in their briefs with regard to the application of the last clear chance doctrine and appellants' lack of negligence and the negligence by respondent say:

"Admittedly respondent did not attempt to check the speed of his car after becoming aware of his peril. According to the testimony of the witness Lamb he merely attempted to divert its course."

The fact is the collision evidently followed within a fraction of a second after the cars had entered the intersection, but how soon after the cars entered the intersection the collision occurred or whether either realized its imminence were questions of fact and counsel in urging respondent's negligence in not applying his brakes overlooks appellant Tonkin's statement that he did neither, that is, apply his brakes or divert his course.

Appellant also urges that the judgment was improperly signed by the judge instead of the clerk, citing C. S., sec. 6895. There is a difference between signing a judgment and entering it and the judgment is properly signed by the judge. (*Stewart Wholesale Co. v. District Court*, 41 Ida. 572, 240 Pac. 597.)

Appellants' final point is that the verdict is excessive. This, they urge, is established by respondent's examination; by the fact that the plaintiff was able, some two months after the accident, to resume his studies in high school from which he graduated in the following May, and by the further fact that he was able to join the national guard in March, 1927, nine months after the accident occurred.

Drs. Stewart and Stone and Cole testified with regard to the condition of respondent and the progress of his ailment. Dr. Talbot, the physician who was first called, was not a surgeon and did not follow the case other than in a perfunctory manner.

The hypothetical question propounded to Dr. Stewart details respondent's condition as a result of the accident and is supported by the testimony.

The three doctors agreed that the respondent had been seriously and permanently injured; that his mind and nervous system had been permanently affected and that his condition will continue to grow worse; that his physical condition has been affected by the nervous shock and certain of his brain tissue destroyed.

Defendants did not submit any medical testimony contradicting this evidence. While it is true that plaintiff, in spite of the accident, was able to complete his studies at the Wilder High School, there is considerable evidence that this was accomplished not so much by his own industry and diligence as by the considerate attitude of his family and his teachers. The evidence shows that whereas before the accident he was alert and ambitious, after it he was a poor student, lacking both initiative and energy.

When plaintiff applied for admission to the national guard, he declared under oath that he was physically qualified and ''free of illness, disease, injuries and infirmities.'' Both Drs. Stewart and Cole testified that in cases of severe disturbance of the central nervous system, a feeling of well-being and buoyancy, at intervals, was not uncommon. Furthermore, Dr. Cole, who signed respondent's health certificate, testified that he did so largely in the hope that respondent would be benefited by the service.

His military record was poor. He was dense in getting instructions and in executing them. He lacked physical stamina necessary for active service and became ill at the annual encampment.

Respondent at the time of the accident was between seventeen and eighteen years old, with an expectancy of between forty-four and forty-five years. While the verdict is large, in view of the seriousness of the injuries suffered, the respondent having remained unconscious after the accident for eight days, having suffered a total loss of memory of the events of the accident, being left in a condition where it will probably be impossible for him to pursue other than manual labor and unable to study for professional employment, we cannot say that there was not evidence, if believed, to justify

the jury in rendering the verdict it did or that the verdict was so excessive as to be clearly the result of passion and prejudice. (*Kinzell v. Chicago etc. Ry. Co.*, 33 Ida. 1, 190 Pac. 255; *Rosander v. Market Street Ry. Co.*, 89 Cal. App. 721, 265 Pac. 541; *Bucktrot v. Partridge*, 130 Okl. 122, 265 Pac. 768; *Roeder v. Erie Ry. Co.*, 164 N. Y. Supp. 167; *Eckert v. Chicago etc. Ry. Co.*, 135 Minn. 372, 160 N. W. 1020.)

The judgment is affirmed. Costs to respondent.

Budge, C. J., and T. Bailey Lee, J., concur.

Petition for rehearing denied.

WM. E. LEE, J., Dissenting.—In *Wilson v. St. Joe Boom Co.*, 34 Ida. 253, 200 Pac. 884, this court said:

"In a suit for personal injuries, evidence that the defendant carries casualty insurance is incompetent and immaterial; but counsel for plaintiff may be permitted on the *voir dire* examination to ascertain whether the jurors have any interest in the result of the litigation, although this may show such juror's connection with a casualty company, so long as the privilege is not abused or used as a subterfuge to communicate improper matter to the jurors."

See, also, *Cochran v. Gritman*, 34 Ida. 654, 203 Pac. 289, and *Bressan v. Herrick*, 35 Ida. 217, 205 Pac. 555. In the face of this clear statement of the rule, in the *voir dire* examination of the jury one of plaintiff's attorneys deliberately told the jury: "We are advised that there is an insurance company connected or interested in the suit." In my judgment, the remark was manifestly prejudicial. This court said in *Steve v. Bonners Ferry Lumber Co.*, 13 Ida. 392, 92 Pac. 363, " . . . . for it is well recognized that it is only done for one purpose, and that is to prejudice the jury." In none of the foregoing decisions has this court indicated that such practice is permissible. The trial court should have granted defendant's motion for a mistrial.

The injury occurred on June 28, 1926. The following September respondent had so far recovered as to be able to enter high school, from which he graduated the May following. He joined the national guard in March, 1927, passing the required physical examination and making the following statement under oath:

"I believe myself to be physically qualified to perform the duties of an able bodied soldier, and that at present I am free of illness, disease, injuries and infirmities."

In view of these facts, I am of the opinion that the verdict was so excessive as to be the result of passion and prejudice. The judgment ought to be reversed and the cause remanded for a fair trial.

I am authorized to state that Mr. Justice Varian concurs with me.